Commonwealth ex rel. Turk, Appellant, *v.* Ashe, Warden.

Argued April 14, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Milton W. Lamproplos,* for appellant.

*Wm. P. Dennison, Jr.,* with him *Frank J. Docktor,* District Attorney, *Wm. C. Porter,* First Assistant District Attorney and *Owen B. McManus,* for appellee.

OPINION BY ARNOLD, J., July 20, 1950:

The Court of Common Pleas of Allegheny County dismissed a petition for a writ of habeas corpus presented by the relator, Mike Turk, an inmate of the Western State Penitentiary, and he appealed. The relator requested counsel on his appeal, and this Court

appointed Milton W. Lamproplos, Esq., to represent him. We express our thanks to counsel for his oral argument and able brief, both of which exhibited a high degree of skill and industry.

On January 28, 1948, Turk was indicted in Washington County for consensual rape upon his daughter, Esther Turk, and the case went to trial in the oyer and terminer on February 9, 1948. Throughout this trial Turk was represented by counsel chosen and employed by him. On February 10, 1948, the jury returned a verdict of guilty. There was no motion for a new trial. On February 17, 1948, Turk was sentenced to a term of not less than seven and one-half years nor more than fifteen years, effective from February 10, 1948. From this judgment he did not appeal.

It is an admitted fact that when the case was tried in the Oyer and Terminer of Washington County neither the testimony nor the charge of the court was stenographically reported.

It is alleged that this omission constituted a violation of the due process provision of the Federal Constitution, and also of the Pennsylvania Constitution of 1874, Article I, Section 9, to the effect that a person shall not be deprived of his liberty unless by "the law of the land."[1] It is also asserted that Turk was deprived of procedure under which his conviction might have been reviewed, and he alleges that trial errors were committed.

Court stenographers or reporters were unknown to the common law. Their appointment and duties are purely statutory and there is no constitutional require-

---

[1] The Constitution of 1776, Article I, Section 9, of the Declaration of Rights, contains substantially the same phraseology. The Constitution of 1790, Article IX, Section 9, and the Constitution of 1838, Article IX, Section 9, are in the exact words of Article I, Section 9, of the Constitution of 1874.

ment that a trial be stenographically reported. The first authority for their appointment was the Act of 1874, P. L. 182, which gave the courts *discretion to appoint.* The subsequent acts up to 1907 provided either discretionary appointment,[2] or applied only to civil cases.[3] The Act of 1887, P. L. 199, first authorized such appointments *for the criminal courts.* That Act was repealed by the Act of 1907, P. L. 135, which provided that the proceedings of the criminal courts be reported "whenever in the opinion of the trial judge such services shall be necessary." The Act of 1907 was amended by the Act of 1911, P. L. 161, which provided that the proceedings be reported *"whenever requested so to do by any defendant . . . or his . . . counsel, before or during the trial . . ."* (Italics supplied). See 17 PS Sec. 1802.

It is admitted that neither the defendant nor his counsel (chosen and employed by him) requested the trial court to have the case reported stenographically.

As to appeals in criminal cases, the common law writ of error was not of right but of grace, and was procured by a petition setting forth probable cause. Under the Constitution of 1790, Article V, Section 5, and the Constitution of 1838, Article V, Section 5, the party accused "may, *under such regulations as shall be prescribed by law,* remove the . . . proceedings . . . into the Supreme court." (Italics supplied). Various statutes provided that an appeal was only on allowance by one of the justices of the Supreme Court or sued out with the consent of the Attorney General.[4] By the Act of November 6, 1856, Laws of 1857, P. L.

[2] The Act of 1874, P. L. 182; Act of 1876, P. L. 140; Act of 1887, P. L. 199.

[3] The Act of 1881, P. L. 107; Act of 1907, P. L. 135.

[4] Act of 1791, Sec. 7, 3 Sm. L. 30; Act of 1848, P. L. 25, relating to Philadelphia. Under the Act of 1722, I Sm. L. 138, Sec. 9, apparently appeals were of right.

795, in *felonious homicide* the appeal was of right. Under the Criminal Procedure Act of 1860 both as to felonious homicide and proceedings in the oyer and terminer the appeal was only on cause shown.[5] Under the Constitution of 1874, Article V, Section 24, an appeal in felonious homicide is of right.[6] In all other criminal cases the appeal is "as might be provided by law."

Under the Act of 1895, P. L. 212, creating the Superior Court, an appeal from the courts of oyer and terminer is of right.[7] An appeal from the quarter sessions was on allowance by a judge of the Superior Court.[8] By the Act of 1897, P. L. 67, all appeals to the Superior Court in criminal cases are of right.

At common law, and until the Act of 1856, supra, an appeal in a criminal case was, in effect, merely a motion in arrest of judgment. Neither the sufficiency of the evidence nor any trial errors were reviewable.[9] In Pennsylvania that situation was somewhat alleviated because the Justices of the Supreme Court then sat in the oyer and terminer, a power which still exists but is now rarely exercised.[10] Trial errors were not reviewed because there was no method of taking exceptions in criminal cases. In civil cases exceptions were taken under the Statute of Westminster, 2d (13 Edward I, Chapter 31), which has always been in force in Penn-

[5] Act of 1860, P. L. 427, Sections 33, 57, 58 and 59.

[6] Taken from the Act of 1870, P. L. 15. See *Sayres v. Commonwealth*, 88 Pa. 291, 306.

[7] Section 7 (b), 17 PS Sec. 183.

[8] Section 7 (a), 17 PS Sec. 182.

[9] *Middleton v. Commonwealth*, 2 Watts 285; *Hopkins v. Commonwealth*, 50 Pa. 1, 13.

[10] Constitution of 1790, Article V, Sec. 3; Constitution of 1838, Article V, Sec. 4; Constitution of 1874, Article V, Sec. 3.

sylvania.[11] Exceptions were taken by writing out the question, objection, answer and ruling, or a part of the charge of the court, and the exception thereto, to which the court would then affix its seal. Later the signature of the court took the place of the seal. Thus was taken a complete bill of exceptions.[12] But that Statute only applied to civil cases and was inapplicable to the criminal causes.[13] The Act of 1856, supra, (relating only to felonious homicide) provided that exceptions should be taken "as in civil cases"; and under the Act of 1874, P. L. 219, bills of exception were allowed in all criminal cases according to the practice in civil causes. Thus exceptions in all criminal cases may be taken under the Statute of Westminster 2d,[14] or by oral objection and exception when the case is stenographically reported.[15]

The relator claims that there were trial errors in the admission and rejection of evidence, and that the testimony was insufficient to sustain the verdict. These are but generally described in his petition. He then avers that the absence of a court reporter made it impossible to have the alleged errors reviewed.

Since "the law of the land" provided that a criminal trial shall be stenographically reported, *at any stage*

---

[11] See 3 Binney 533, 606; *Commonwealth ex rel. v. Arnold*, 161 Pa. 320, 29 A. 270; *Altoona v. Nycum*, 156 Pa. Superior Ct. 445, 446, 41 A. 2d 219.

[12] vonMoschzisker's "Trial by Jury," sections 222, 223.

[13] *Middleton v. Commonwealth*, 2 Watts 285; *Hopkins v. Commonwealth*, 50 Pa. 1, 13; *Fife, Jones & Stewart v. Commonwealth*, 29 Pa. 429, 435.

[14] *Fife, Jones & Stewart v. Commonwealth*, 29 Pa. 429.

[15] As to the practice under stenographic reporting see *Rosenthal v. Ehrlicher et al.*, 154 Pa. 396, 26 A. 435; *Connell, Sheriff, v. O'Neil, Executrix*, 154 Pa. 582, 26 A. 607, limiting *Janney v. Howard*, 150 Pa. 339, 24 A. 740.

*of the proceeding, whenever the defendant asks for it,* —where he makes no such request he cannot thereafter complain that by reason of his own inaction the case was not reported.

But stenographic reporting of the trial would merely have enabled his lawyer to take exceptions *orally.* Even without such reporting he could still take any exceptions he desired. Certainly a defendant represented by counsel cannot keep silent at the trial, gamble on the verdict, and when it is found to be adverse, demand a new trial on the ground that he took no exception.

The relator was therefore not deprived of his liberty except in exact accord with "the law of the land"; nor was his conviction obtained without "due process of law."

The order dismissing the petition for a writ of habeas corpus is affirmed.