Commonwealth *v.* Diehl, Appellant.

Argued June 2, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Paul A. McGinley,* for appellant.

*George J. Joseph,* First Assistant District Attorney, with him *M. Jack Morgan,* District Attorney, for appellee.

Opinion by Mr. Justice Chidsey, June 28, 1954:

Appellant was charged with seven criminal offenses, four of which were felonies. The charges arose out of the same transaction and the cases were jointly tried by a jury which found appellant guilty on all counts. A motion for new trial was dismissed and sentences imposed.

At the trial no evidence was produced by the appellant to controvert the facts established by numerous witnesses called by the Commonwealth. On the night of July 15, 1952 following an altercation in a cafe in the City of Allentown, appellant was ejected therefrom. He went to his home, returned with a highpowered rifle and fired two shots through the window of the cafe. Fortunately these shots did not strike anyone. While fleeing from the scene, he attacked police attempting to arrest him. The police followed the defendant to his home and finally onto the roof where on that and other rooftops there was an exchange of shots between him and the officers. During the shooting the appellant shot a neighbor who had directed police officers through his house to the roof. This victim was seriously and permanently injured. After being felled by a shot, the appellant was captured. Appellant's defense was that he was insane at the time of the commission of these acts and as a consequence did not know the difference between right and wrong.

In his motion for new trial appellant complained only of error in the trial judge's charge. On appeal to the Superior Court from the refusal of this motion, appellant raised for the first time the contention that he had been deprived of constitutional rights in that

216

he was not present in court when additional instructions were given to the jury, and that there was fundamental error in not having a record made of the proceeding when these additional instructions were given. We allowed an appeal from the decision of the Superior Court which overruled this contention and as well appellant's other assignments of error based on the charge of the trial judge. Before us appellant presses only the contention based on infringement of his constitutional rights under Section 9 of Article I of the Pennsylvania Constitution.[1]

It is admitted that although his attorney was present, appellant was not present when the additional instructions were given, and that no record was made of what then occurred. It is also admitted that defense counsel and the district attorney were notified that the jury was about to return and that both were present throughout this phase of the trial. The versions of the district attorney and of defense counsel as to the event vary in detail, but it is not denied or disputed by the latter that the jury retired in the afternoon after the charge of the court and returned in the evening; that the jury then requested and received additional instructions; that there was no objection made to the giving of the instructions in the appellant's absence nor any objection or exception taken to the instructions given; that there was no request for added instructions and no request that the proceed-

---

[1] "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.". Article I, Section 9.

ings or any part thereof be recorded. As before stated, no complaint that the additional instructions were erroneous or prejudicial, or that the appellant was not personally present when they were given, was made in appellant's motion for new trial.

In capital cases the defendant's presence is necessary at every stage of the trial, whether he is at liberty on bail or in custody. In *Prine v. The Commonwealth,* 18 Pa. 103, the same was stated to be true in the case of noncapital felonies. But later decisions are to the contrary when the defendant is at liberty on bail. In *Lynch v. The Commonwealth,* 88 Pa. 189, the defendant had been indicted and tried for larceny, a felony. While the jury was deliberating, the defendant who was out on bail, left the court room. The verdict of guilty was received and recorded while defendant was absent. Nevertheless this Court sustained the overruling by the trial court of a motion in arrest of judgment based upon this alleged error. In the recent case of *Commonwealth ex rel. Milewski v. Ashe, Warden,* 363 Pa. 596, 70 A. 2d 625 (1950), this Court definitely stated that where the defendant charged with a noncapital felony is at liberty on bail, his absence from the court room may be construed as a voluntary waiver of his right to be present when the verdict is rendered.[2] Since the announcement of the

---

[2] At p. 605 Mr. Chief Justice Maxey said: "1. That in cases of felonies a defendant not at liberty on bail must be brought into court when a verdict in his case is returned by the jury. 2. That if such a defendant is not in custody his absence from the courtroom when the verdict is announced may be construed as a voluntary waiver on his part of his right to be present, but even when a defendant in a felony case is at liberty he and his counsel should be given reasonable notice, if it is practicable so to do, that the jury is about to return its verdict. 3. In *capital* cases a defendant cannot be permitted, either by himself or by his counsel, to waive his right to be present when the verdict is returned by the jury. In *noncapital* cases a defendant *can* waive this right.".

verdict is one of the most important stages of the trial, it follows that the absence of the defendant at any stage of the proceeding may be construed as a voluntary waiver of his right to be present. It has been expressly so held by the Supreme Court of the United States. In *Diaz v. United States*, 223 U. S. 442, Mr. Justice VAN DEVANTER who delivered the opinion of the Court, in referring to a defendant's right to be present under the Sixth Amendment to the Constitution of the United States which is the substantial equivalent of Section 9, Article I of the Constitution of Pennsylvania, said (p. 455) : ". . . In cases of felony our courts, with substantial accord, have regarded it as extending to every stage of the trial, inclusive of the empaneling of the jury and the reception of the verdict, and as being scarcely less important to the accused than the right of trial itself. And with like accord they have regarded an accused who is in custody and one who is charged with a capital offense as incapable of waiving the right; the one, because his presence or absence is not within his own control, and the other because, in addition to being usually in custody, he is deemed to suffer the constraint naturally incident to an apprehension of the awful penalty that would follow conviction. But, where the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present. . .". [Citing many cases from various jurisdictions].

Appellant calls attention to the view expressed by Mr. Chief Justice MAXEY that even when a defendant

in the case of a noncapital felony is at liberty on bail, he and his counsel should, if it is practical so to do, be notified that the jury is about to return its verdict (see Footnote 2, supra). This language may be considered advisory rather than mandatory. In any event we hold that in a noncapital felony case where, as here, competent counsel for the defendant is present and he makes no request that his client also be present during the giving of additional instructions to the jury, the defendant's absence will be construed as a voluntary waiver of his right to be present.

The district attorney asserts that it was expressly agreed that the additional instructions be given without making a stenographic record thereof. Whether or not there was an express agreement, the same counsel who tried the case argued the appeal to the Superior Court and to this Court, and in neither Court has he denied that he made no request that the proceeding be recorded when the additional instructions were given. In the absence of such request, there was no violation of constitutional rights: *Commonwealth ex rel. Turk v. Ashe, Warden,* 167 Pa. Superior Ct. 323, 74 A. 2d 656 (1950), certiorari denied by the United States Supreme Court sub. nom. *Turk v. Claudy, Warden,* 340 U. S. 907.

We are satisfied that there was no infringement of appellant's constitutional rights or any reversible error, and that the Superior Court properly upheld his conviction.

The judgment of the Superior Court is affirmed.

―――――――

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

In charging the jury in this case the Trial Judge said: "You *will* render a verdict in each one of these seven cases, one way or the other. You *will* and you

could either find the defendant guilty in any one or all of those seven cases, or you could find the defendant not guilty in any one or all of those cases, depending upon what you find." *

In speaking of finding a verdict of guilty the Trial Judge used the imperative, *"will."* In speaking of the possible finding of not guilty, the Judge omitted the imperative and merely said "you could."

To the jury the judge is the ultimate word in authority. The jury not only recognizes in the judge the depository of supreme power but the fount of unexcelled wisdom. The black robe, the high bench, the deference of the lawyers, all develop in the jury an even greater awe, respect and implicit obedience to the judge than that which they already entertained before they entered the courthouse. It may well be, in spite of this obeisance, that the jury did not attach to the imperative "will" its strict literal significance. On the other hand, no one can say with positive assurance that they did not. In *Commonwealth v. Molten,* 230 Pa. 399, 407, this Court said:

"Who can tell which instruction they followed? . . . It is enough to know in such a case that an erroneous instruction was of a character likely to mislead the jury on a point vital to the defendant."

Nothing in this dissent is to be interpreted as reflecting on the impartiality of the Trial Judge, his outstanding judicial ability and his conscientious resolve to see that the law is upheld and justice is done. Whatever happened in this trial which I regard to be error occurred not out of any conscious desire on the part of the Court or the District Attorney to deny the defendant his constitutional prerogatives. Nonetheless, I believe that errors were made and it is my duty, in

* Italics throughout, mine.

reviewing the case as an appellate judge, to refer to those flaws in the trial with the hope that my observations may serve, to the extent that they will be recognized as just observations, to prevent the recurrence of these imperfections which may work injustice on other undisclosed mortals who may fall into the toils of the law, no matter how much due to their own faults and their own weaknesses.

The defense in the case at bar was insanity. After devoting two pages of instruction to the subject of insanity in crimnal cases the Tral Judge said: "That, ladies and gentlemen *is the main issue,* as I take it, in this case." This instruction, taken by itself, was erroneous. The main issue was whether the Commonwealth had established its case beyond a reasonable doubt. And that burden on the Commonwealth never changes or shifts. As far back as 1878 this Court said in *Turner v. Commonwealth,* 86 Pa. 54: "That the burden of proof never shifts, but rests upon the prosecution throughout, so that, in all cases, a conviction can be had only after the jury have been convinced, beyond a reasonable doubt, of the defendant's guilt."

Further describing the defense of insanity the Trial Court said: "However, if you find he did not have sufficient knowledge to control his actions and that *his knowledge was destroyed* and he could not distinguish between right and wrong, then you would have a right to say that he was insane at the time, and therefore, not responsible for his acts. That is a question for you to determine from all of the facts in the case." By this instruction the Judge placed upon the defendant a burden which the law has never sanctioned. What the judge in effect said was that before the jury could find the defendant not guilty on the ground of insanity they had to find that the defendant's mind was a complete blank, that it was devoid

of memory, recognition, logic, and capacity to understand cause and effect. Such a standard does not exist in criminal law. Such a test would mean that there could be no acquittal where the defense is insanity unless the defendant is stark mad, his reason split asunder and his mind incapable of recognizing the most familiar object or person. The fact that the Judge also said that the defendant must be incapable of distinguishing between right and wrong did not correct the excessive statement in the first phase of the instruction because it will be noted that he said the defendant's knowledge must be destroyed *and* he must be incapable of distinguishing between right and wrong.

In his brief the District Attorney argues that the jury could not have been misled by the Judge's instructions, that words cannot be isolated from their surroundings, and that meaning flows only from totality of context. This is true if the analyst of the judge's charge is a lawyer, a professor of rhetoric, or another judge. But the test of a judge's speech is not how it affects another judge or a lawyer or university teacher, but how it affects twelve average men and women hearing the speech only once, taking no notes and recollecting the speech only as it affected them at the time of delivery. No juror is capable of remembering *ipsissimis verbis* what a judge says in a 40 minute charge. The juror remembers the speech only in fragments of phrases with a generalized idea of purport.

It could well be that the jurors in this case were not misled by the inappropriate words which fell into the judge's charge and that they remembered only his very correct instructions. But no one can say with positiveness that they did not remember the wrong words and were not guided by them. After all, a judge controls a trial by words, and not by force; he directs

the participants by language, not by baton; he illustrates with phrase, not by pointer. As King Lear said to Cordelia: "Mend your speech a little, lest you may mar your fortune," the judge should mend his speech when his words may mar the rights and the liberties of those entrusted into his care.

Speaking extemporaneously is as precise an art as playing a violin: one cannot touch the wrong fret or bear down on the wrong string without producing discord. There must be a constant coordination between the brain and the tongue, and if there is a slip of the tongue, the brain must dictate a correction, because the jurors assume that the judge is infallible and they are as obedient to his mistaken directions as they are to his correct instructions.

In further attempted extenuation of the possible harm done by the Judge's *lapsus linguae,* the District Attorney argues that even if the Judge may have erred, the defendant is not entitled to a new trial because at the conclusion of the charge the defense counsel did not ask the Judge to correct his errors. This observation has always seemed to be the apogee of unfairness. If the defendant lawyer fails in his responsibility, why should his client suffer the consequences? A client whose right to justice is jeopardized by the honest error of his attorney should no more be made to suffer when the Court can repair the injury, than a patient should be permitted to die because his first doctor erred in his diagnosis.

Furthermore, why must the onus for a judge's mistake fall upon the lawyer? If the error is of such a character that the judge himself does not detect it, why is it to be assumed that the lawyer should be wiser than the judge? Is the student supposed to know more than the teacher?

And then there is to be considered the proposition that the lawyer always runs the risk of losing favor with the jury when he brashly announces that the judge is wrong.

But there is something far more serious than the matter of the Court's charge which, in my judgment, necessitates a new trial here. The jury had been deliberating for nine hours when it was learned that in all probability their differences were such that they could not be reconciled. The fact that the jury had sought in vain for so long a time as nine hours to reach a unanimous verdict indicates that some serious doubts had arisen with regard to the prosecution's case. Defense counsel was informed that since there were no facilities available for housing the jury overnight, the jury would probably be dismissed by the court. No attempt was made to notify the defendant to be present at the session of the court about to take place. When the jury was assembled in the courtroom the Judge told them of the lack of sleeping accommodations in the courthouse, thus suggesting that possibly they should reach a unanimous verdict in order to avoid great inconvenience to themselves. It appears that the jurors then asked questions to which the Judge replied, and that the Judge in turn put questions to which members of the jury responded. What these questions and answers were have fallen into the limbo of the unrecorded, into the darkness of the unrecollected, and the mists of the irrecoverable past. No stenographer was present to make a transcript of the session and neither the judge nor the lawyers attempted to construct a memorandum or enter into a stipulation as to what occurred.

It is to be repeated that the person whose fate was being discussed and decided was absent. Nor did any one seem to be concerned about his absence. To say

that it was the defense counsel's responsibility to have the defendant present is to say that defense counsel was in charge of the courthouse, the prosecution staff, the attaches and the deputys sheriff. The responsibility for the conduct of a trial is that of the judge. The next person in public authority is the district attorney. He is a quasi-judicial officer and a responsibility devolves upon him as well as the judge to protect the constitutional rights of the defendant. The District Attorney knows that if the constitutional rights of the defendant are invaded, the trial will be invalidated, and therefore, if only for the reason of saving himself additional labor in a retrial of the cause he should see to it that provisions of the Constitution having to do with the defendant's rights are observed not in the breach but in the honoring thereof. Article I, Section 9 of the Pennsylvania Constitution specifically proclaims: "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel . . ."

Instructions delivered to a jury after they have retired for deliberations are as much a part of the trial as the original instructions. If the defendant were absent during the Judge's charge to the jury at the termination of the testimony, no one could conceivably contend that this would not constitute reversible error. "Trial by jury becomes a mockery if it is proper to proceed in a criminal case in the absence of the defendant, when he has not expressly or impliedly waived the right to be present," our Superior Court said in the case of *Commonwealth v. Gabel and Gabel*, 79 Pa. Superior Ct. 59. Further, "The right of one charged with crime to be present at his trial is by the people of Pennsylvania regarded as so precious that they have denied to the legislature the power to interfere with it, by including in our Declaration of Rights this provision: 'In all criminal prosecutions,

etc. .' Authorities sustaining the right of the accused to be present at his trial might be cited without number, but that is unnecessary, for the question has long ceased to be debatable. These defendants may be, perhaps are guilty, but even if they should escape punishment, that were an evil much less than an attempt by the courts to abrogate principles of abstract justice, and constitutional guaranties."

The world of a criminal trial revolves around the defendant. Happily or unhappily he is the center of that forensic universe. He is to the trial what the patient is to the operating room, what the sitter is to the portrait painter, what the orchestra is to the director. In no manner can he be eliminated and there still be a trial. In some foreign countries an accused may be tried in absentia but such a procedure can only be regarded as a self-contradiction in terms. How can there be a trial if the person to be tried is not available for trial? One may as well speak of tailoring a suit for a person who does not exist, or of constructing a house with imaginary material, or of drawing water from a dried-up well.

Chief Justice GIBSON, the object of veneration and pride of the Pennsylvania judiciary, as well as the subject of praise wherever the profession of law is respected and extolled, said in the case of *Prine v. Commonwealth,* 18 Pa. 103: "It is undoubtedly error to try a person for felony in his absence, even with his consent. It would be contrary to the dictates of humanity to let him waive the advantage which a view of his sad plight might give him by inclining the hearts of the jurors to listen to his defense with indulgence. Never has there heretofore been a prisoner tried for felony in his absence. No precedent can be found in which his presence is not a postulate *of every part of the record.* He is arraigned at the bar; he pleads in

person at the bar; and if he is convicted, he is asked at the bar what he has to say why judgment shall not be pronounced against him. These things are matter of substance, and not peculiar to trials for murder: they belong to every trial for felony at the common law, because the mitigation of the punishment does not change the character of the crime. . . In a conviction of murder, we have required the substantive parts of a proper record to be set out so clearly as to be separable from the dross with which it is usually blended. This was in *favorem vitae*. In other felonies, it is allowable to presume that everything was rightly done till the contrary appear; but when it is stated on the record positively that the prisoner was not present, we cannot shut our eyes to the fact. What authority had the prisoner's counsel in this instance, on the pretext of convenience, to waive their presence? In a criminal case, there is no warrant of attorney, actual or potential; for when a prisoner binds himself by an agreement which he is competent to make, it is entered on the record as his immediate act; and *this is a sufficent reason why he should be in Court to do those things which his counsel could not do for him.* It is unnecessary, however, to speak of delegated authority; for the right of a prisoner to be present at his trial is inherent and inalienable. The record before us, therefore, is erroneous; but we direct that the prisoners be held to answer a fresh indictment."

Of course, if a defendant has been present throughout a trial and then, at the moment the jury is about to return its verdict, purposely absconds or conceals himself, a different situation is presented. But that is not the case here. Roscoe Diehl was available. The court authorities saw to it that he was present when the judge sentenced him to the penitentiary for a maximum term of ten years. Why did they not exert

the same effort in locating him when the jury deliberating his fate was about to receive additional instructions? It is no answer to say that it was the defense attorney's responsibility to have the defendant present. There is nothing in the record to show that defense counsel was instructed by the court or anyone to have the defendant present. From the history of the case it would seem that there was every indication the jury was about to be discharged when the defense counsel was notified to come to the courthouse. It was only because of an inquiring colloquy between the Judge and the jury that further instructions were given to the jury. The defense counsel would not have had an opportunity, once the court decided to give additional instructions, to leave the courtroom to make an effort to locate the defendant.

The majority in its opinion makes no reference to the case of *Commonwealth v. Cohen*, 133 Pa. Superior Ct. 437, which seems to me to be highly illuminative of the principle involved here. In that case the defendant was charged with the felony of larceny. In charging the jury the Trial Judge said: " 'You all recall the general charge of the court which was given to all the jurors at the beginning of this week. The general principles told you then apply to this case, regardless of the fact that only testimony on behalf of one party to the controversy has been submitted to you.' " The "general charge" referred to here had been delivered on a Monday, the defendant's trial began on the following Tuesday. The defendant was not in the courtroom when the "general charge" was delivered. The ensuing conviction was reversed, the Superior Court saying: "The absence of appellant when the general charge was delivered was not voluntary; he cannot be considered to have waived any of his constitutional rights. In our opinion, the instruction to the

jury selected to try him that in passing upon his guilt or innocence its members should 'apply' to the evidence in his case certain 'general principles' of law announced by the trial judge in a 'general charge' delivered on a previous occasion and in the absence of appellant and his counsel, was an invasion of his constitutional rights."

If it was error for the Court to charge the jury in the absence of the defendant *prior* to his trial, it seems to me that it was equally error to charge the jury in the absence of the defendant *after* the trial. The fact that counsel was present when the additional instructions were given in this case does not alter the situation. The privilege in the Constitution is guaranteed to the defendant. Counsel only *represents* the defendant, he is not his Siamese twin. He speaks for him, he argues for him, he pleads and appeals for him, but he does not go to jail for him. The most persuasive eloquence in the world cannot speak as much for the defendant as his own plight personally presented to the jury on the verge of what may be his ultimate disaster or his providential deliverance. Whatever impression his appearance may have on the jury in resolving doubts in the evidence as to guilt or innocence cannot be taken away from him by substituting for him an entirely different personality, even his alter ego in the form of counsel. As Chief Justice GIBSON said in the *Prine* case, supra, the right of a defendant to be present at every stage of the trial is "inherent and inalienable" and may not be delegated.

The Majority does cite the case of *Commonwealth ex rel. Milewski v. Ashe, Warden,* 363 Pa. 596, but that decision supports the position of the *defendant,* not the Commonwealth. In that case the defendant was not in court when the jury returned its verdict of assault and battery with intent to rob. The prisoner

was in jail when the verdict was rendered. This Court reversed the conviction on the sole ground that the prisoner was *absent* when the jury returned its verdict. Chief Justice MAXEY, speaking for this Court, said: "1. That in cases of felonies a defendant not at liberty on bail must be brought into court when a verdict in his case is returned by the jury. 2. That if such a defendant is not in custody his absence from the courtroom when the verdict is announced may be construed as a voluntary waiver on his part of his right to be present, but even when a defendant in a felony case is at liberty he and his counsel should be given reasonable notice, if it is practicable so to do, that the jury is about to return its verdict."

It will be noted that the Chief Justice said that in felony cases (which this one is), the defendant *and* his counsel should be notified. The Chief Justice did not say the defendant *or* his counsel. Nor is there any representation in this case that it was not practicable to notify the defendant. Thus, this *Milewski* case is authority to the direct contrary of the principle for which the majority cites it. In an attempted explanation of Chief Justice MAXEY'S specific direction that the defendant and counsel should be notified, the Majority says that "this language may be considered advisory rather than mandatory." But why advisory? In concluding his exhaustive and learned discussion on the very point engaging our attention in this case, Chief Justice MAXEY said: "This Court has consistently maintained the principle emphatically enunciated by Chief Justice GIBSON in the *Prine* case, supra, and no warrant can be found in any of our decisions for holding that the rights of a defendant in a felony case are not violated if an opportunity to be present at the rendition of the verdict is denied him. Our *conclusions* are: 1. That in cases, etc." and as heretofore quoted.

On the basis of the Majority's reasoning, then, even the constitutional guarantee may be considered advisory rather than mandatory. The proposition that defendant and counsel must be present in court was not spoken as obiter dictum in the *Milewski* case. It appears in the *conclusions* of the Court. And it is to be noted that (as late as 1950), this Court affirmed the principles laid down by Chief Justice GIBSON in the Prine case.

The discussion of the Majority is based on an entirely incorrect premise. It says: "Since the announcement of the verdict is one of the most important stages of the trial, it follows that the absence of the defendant at any stage of the proceeding may be construed as a voluntary waiver of the right to be present." But it is not of the announcement of the verdict that the defendant complains. His complaint is that he was not present when the jury was being instructed. The jury had not yet reached its decision. The trial was still in progress because deliberations of the jury, it is unnecessary to state, constitute part of the trial by jury. Conceivably the defendant's presence may have had some influence on the jury's deliberations.

Furthermore, no matter how well-informed counsel may be in his client's case, he cannot, by the very nature of things, know as much as the defendant knows about the circumstances, events, motivations, plans and fortuitous happenings all of which interweaved to bring about the tragic occurrence which is the subject of the prosecution. As the judge delivered his additional instructions, the defendant could well have assisted his attorney in suggesting further instructions or in having his attorney make suitable objections to instructions which he may have deemed not consonant with the facts. At any rate, according

to the Constitution, the defendant had the *right to be heard!*

The Majority says that by his absence the defendant waived his right to be present. The defendant did not waive his right to be present. One cannot waive what one does not know. The jury returned to the courtroom late at night, after it had been deliberating nine hours. The defendant had left the courtroom after adjournment. No one had instructed him to remain. Whether there was a room in which he might have waited for the jury's return is not indicated. But it is certain that there is no evidence that he waived his right to be present. The definition of "waive" is "to throw away, to relinquish voluntarily, as a right which one may enforce if he chooses." (Webster's Unabridged Dictionary.) The Court officials were remiss in their duties in not informing Diehl to be present. Diehl was entirely ignorant of the fact that the jury would return that evening. To say, under those circumstances, that Diehl waived a right of which he was completely ignorant is to say that a starving man turned down a dinner that was never offered to him.