Commonwealth *v.* Anderson, Appellant.

484

Submitted April 20, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*William J. Gallagher,* for appellant.

*William Butler, 4th,* Assistant District Attorney, and *Norman J. Pine,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, January 25, 1971:

On February 23, 1967, Charles E. Anderson was convicted by a jury in Chester County of assault and battery with intent to kill, and violation of the Uniform Firearms Act. A prison sentence was imposed immediately following the jury's verdict. No appeal was then filed. Throughout the foregoing proceedings, Anderson was represented by court-appointed counsel.

In May 1968, Anderson sought post-conviction relief alleging: (1) denial of his *"Douglas"* rights; and (2) denial of the assistance of effective trial counsel. After an evidentiary hearing, at which Anderson was represented by new court-appointed counsel, the court dismissed the petition, but permitted an appeal to be filed from the 1967 judgments of sentence as if timely filed. Such an appeal was entered in the Superior Court and resulted in an affirmance of the judgments without opinion. Judge SPAULDING filed a dissenting opinion in which Judges HOFFMAN and CERCONE joined. See 215 Pa. Superior Ct. 147, 256 A. 2d 868 (1969). We granted allocatur and now reverse.

The trial proceedings were not recorded and hence no transcript is now available for review. Neither counsel requested that a record be made, and the court did not order it to be done. Appellant contends: (1) that failure to record the trial proceedings was a denial of constitutional due process in that it precluded a meaningful appeal; and, (2) that trial counsel's failure to request that the proceedings be recorded and to preserve trial objections violated his right to the assistance of effective counsel.

In Pennsylvania the courts are required by statute to have a record made of all criminal proceedings when-

ever requested so to do by the defendant or his counsel. See Act of May 1, 1907, P. L. 135, §2, as amended, 17 P.S. §1802. The Commonwealth correctly argues that this statute is not self-executing and contends that in the absence of a request that the proceedings be recorded, the statutory right is waived. But is the right also one of constitutional dimension? If so, the waiver issue must be viewed in a different perspective. For the record is barren of facts upon which an effective waiver may be found, and the only relevant evidence is Anderson's uncontradicted testimony at the PCHA hearing that he was not aware of his right in this regard and was not informed thereof by either the court or his counsel. And, as has been stated many times before, a waiver of a constitutional right to be effective must be intentional and knowing and will not be presumed. See *Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019 (1938).

The United States Supreme Court has never specifically ruled that a transcript of a criminal trial, in and of itself, is a vital due process necessity for appellate review in all criminal trials. Instead, there has been a continuous careful hedge about adequate alternatives to a transcript. Most of the relevant cases dealt with the necessity of *furnishing* a transcript to an indigent defendant.

In *Griffin v. Illinois*, 351 U.S. 12, 76 S. Ct. 585 (1956), while holding that in this instance the Illinois authorities had to purchase a trial transcript for indigents who sought to appeal, the Court carefully noted at page 20: "We do not hold however that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court [that of Ill.] *may find other means* of affording adequate and effective appellate review to indigent defendants. For example, it may be that bystanders' bills of

exceptions or other methods of reporting trial proceedings could be used in some cases." The same note of caution is sounded in Justice FRANKFURTER's concurrence: "When a state not only gives leave for appellate correction of trial errors but must pay for the cost of its exercise by the indigent, it may protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent. The growing experience of reforms in appellate procedure and sensible, economic modes for securing review still to be devised may be drawn upon to the end that the State will neither bolt the door to equal justice nor support wasteful abuse of the appellate process." 351 U.S. at page 24.

In *Draper v. Washington*, 372 U.S. 487, 83 S. Ct. 774 (1963), a case decided on the same day as *Douglas v. California*, Justice GOLDBERG, writing for the majority, reaffirmed the *Griffin* principle that alternative methods of reporting trial proceedings are permissible "if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." 372 U.S. at 495.

Enumerating the alternatives Justice GOLDBERG wrote: "A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript. Moreover, part or all of the stenographic transcript in certain cases will not be germane to consideration of the appeal, and a state will not be required to expend its funds unnecessarily in such circumstances." 372 U.S. 495.

A year after the *Douglas* and *Draper* decisions the Court held in *Hardy v. United States*, 375 U.S. 277, 84 S. Ct. 424 (1964) that an indigent who seeks to appeal and is represented by a different attorney from the

one who defended him at trial must be given a complete trial transcript at government expense. Why the complete transcript is so vital to new counsel for the appellant was explained by Justice DOUGLAS in footnote 3 when he cited with approval Boskey, The Right to Counsel in Appellate Proceedings, 45 Minn. L. Rev. 783, 792, 793 (1961):

" '. . . the new counsel is operating under serious handicaps. Normally he has no prior acquaintance with the trial proceedings and no personal knowledge of the case which would form a basis for sound judgment . . .

. . . .

'Recollections and notes of trial counsel and of others are apt to be faulty and incomplete. Frequently, issues simply cannot even be seen—let alone assessed—without reading an accurate transcript. Particularly is this true of questions relating to evidence or to the judge's charge; and it may also apply to many other types of questions. Moreover, the actual record (if appellate counsel could have it to inspect) might disclose issues substantial enough to constitute probable or possible "plain error" even though trial counsel was not aware of their existence; and the indigent should have the same opportunity as the wealthy to urge that plain error should be noticed on appeal. In short, a conscientious counsel freshly entering the case at the appellate stage normally is likely to conclude that a full or partial transcript of the trial proceedings will be indispensable if the requisite "dependable record" is to be obtained as a basis for evaluating the case.' " 375 U.S. at 280-81, n.3, 84 S. Ct. at 427. See also, *Gardner v. California*, 393 U.S. 367, 89 S. Ct. 580 (1969).

The instant case is like *Hardy* to the extent that Anderson is also an indigent now being represented by a different counsel from he who represented appellant

at trial. Dissimiliarity arises from the fact that involved in *Hardy* was a federal statute, 28 U.S.C. §915, providing for federal court authorization of an appeal in forma pauperis.

But can *Hardy* be isolated as simply the interpretation of a federal statute? One commentator gave this response: "[W]hether the mandatory rule [of providing complete transcripts] will be applied to the states may depend to a large degree on the extent to which Hardy rests on constitutional underpinnings. Even though the majority opinion purports to rest on statutory grounds and the concurrence of Mr. Justice GOLDBERG on the supervisory power, the Constitution seemed to lurk behind both opinions, with their stress on fairness to defendants. Moreover, due process apparently requires a transcript of 'sufficient completeness' to enable the appellate court to act intelligently. Coppedge v. United States, 369 U.S. 438 (1962) and, after Hardy, 'sufficient completeness' will probably require furnishing a full transcript." 78 Harv. L. Rev. 143, at 266.

Translating the Supreme Court's guidelines on transcripts the U. S. District Court of Appeals in *Tate v. United States,* 359 F. 2d 245 (D.C. Cir. 1966), said that in addition to the complete transcript necessary where counsel on appeal is not the same as trial counsel, at page 253, 254: "Where counsel on appeal represented the appellant at trial, a transcript relevant to the points of error assigned is a minimal requirement."

Included in the *Tate* decision was a cursory discussion of the *no transcript* problem: "Of course, a guarantee of availability of transcripts on appeal does not solve the problem of cases where no reporter is present at the trial court proceedings. The vehicle of appellate review in the D. C. Court of Appeals [*Tate* was an appeal from the aforementioned court] in cases where no transcript is available is the 'statement of

proceedings and evidence' prepared by trial counsel and approved by the trial judge. Such a system of review has inherent disadvantages in terms of providing an accurate record of proceedings below . . . . There may, therefore, be problems as to whether and to what extent this procedure satisfies the constitutional requirement that in the absence of a transcript the appellate court must be provided with a 'picture' of the trial proceedings reasonably equal to that provided by a transcript. Compare Draper v. State of Washington, 372 U.S. 487, 495, 83 S. Ct. 774 (1963) ; Griffin v. People of State of Illinois, 351 U.S. 12, 20, 76 S. Ct. 585 (1956)." 359 F. 2d at 255.

There was a lack of transcript problem in *Gault,* 387 U.S. 1, 87 S. Ct. 1428 (1967), but the Supreme Court was able to sidestep the issue. In discussing the constitutionality of an Arizona statute, which failed to provide a right of appeal to a minor, the Court stated: "This Court has not held that a State is required by the Federal Constitution to provide appellate courts or a right to appellate review at all. In view of the fact that we must reverse the Supreme Court of Arizona's affirmance of the dismissal of the writ of habeas corpus for other reasons, we need not rule on this question in the present case or upon the failure to provide a transcript or recording of the hearing—or, indeed, the failure of the Juvenile Judge to state the grounds for his conclusion." 387 U.S. at 58, 87 S. Ct. at 1459, 1460. However, the Court referred to *Kent v. United States,* 383 U.S. 541, 86 S. Ct. 1045 (1966), and in making reference thereto used language indicative of how that Court might rule on a case which presented a factual situation where no record was available, by saying: "As the present case illustrates, the consequences of failure to provide an appeal, to record the proceedings, or to make findings or state

the grounds for the juvenile court's conclusion may be to throw a burden upon the machinery for habeas corpus, to saddle the reviewing process with the burden of attempting to reconstruct a record, and to impose upon the Juvenile Judge the unseemly duty of testifying under cross-examination as to the events that transpired in the hearings before him." 387 U.S. at 58, 87 S. Ct. at 1460.

The problem of transcripts in federal criminal trials is alleviated by the existence of 28 U.S.C. §753(b), which provides that reporters of the federal district courts shall record all proceedings in criminal cases had in open court, a mandatory provision, the compliance with which the court has a duty to require. *Casalman v. Upchurch,* 386 F. 2d 813 (1967); *Parrott v. U.S.,* 314 F. 2d 46 (1963). The Court in *Edwards v. United States,* 374 F. 2d 24, 26 (1966) said the statute "was enacted for the protection of the parties and of the court and to the end that justice may be served by having available an adequate record, and particularly so in a criminal proceeding."

Unavailability of transcripts has twice come before the District of Columbia appellate courts in *Williamson v. United States,* 224 A. 2d 309 (1966), and *House v. United States,* 234 A. 2d 805 (1967). Both appellants claimed a denial of due process of law because the trial was not stenographically reported forcing them on appeal to rely on a statement of proceedings and evidence. In both instances the claims were rejected, the *Williamson* court saying: "We know of no authority holding that due process of law requires that all criminal trials be stenographically reported. If a defendant has a right of appeal, he must be assured of appropriate means to present his claims of error on appeal. A stenographic transcript is not the only means by which this can be done. Historically a state-

ment of proceedings and evidence or a bill of exceptions in narrative form, fairly reflecting the purport of the testimony has been acceptable.". 224 A. 2d at 311. The *House* court discussed the implications of *Tate,* supra, saying: "Tate recognized the difficulties confronting the trial court in securing an adequate reportorial staff . . . [and] we do not interpret it as requiring that every criminal defendant must have his trial stenographically reported, whether or not his counsel makes a request therefor. Neither do we interpret it as holding that if no transcript is available a defendant is ipso facto denied the right of an effective appeal." 234 A. 2d at 807, 808. This statement is put in proper perspective by recalling both that the courts of the District of Columbia utilize alternative methods of preserving the proceedings for appeal purposes and the passage from *Tate,* supra, cited earlier, showing the concern of the Appeals Court about the inherent difficulties and constitutional effectiveness of the alternatives.

In *Ebersole v. State,* 91 Idaho 630, 428 P. 2d 947 (1967) the Supreme Court of Idaho held that the lack of minutes by the clerk of court or of a transcript by the court reporter at arraignment proceedings in state district court at which petitioner pleaded guilty constituted such a lack of fundamental fairness as to be a deprivation of due process. [On appeal here there had to be a resort to parol evidence of court officials and of the petitioner himself to establish what took place. See *Gault,* supra, cited earlier.] Noting that the Idaho district court is a court of record which only speaks through its records, the court added: "It has been said that the reason for the creation of courts of record is founded on the proposition that judicial records are not only necessary but indispensable to the administration

of justice. Herren v. People, 147 Colo. 442, 363 P. 2d 1044, 1046 (1961)." 91 Idaho at 634, 428 P. 2d at 951.

A year later in *Martinez v. State,* 92 Idaho 148, 438 P. 2d 893 (1968), the Idaho court tightened its rule even further. There appellant was arraigned on a charge of rape, waived counsel, plead guilty and was sentenced to life. There was no recording of the proceedings by a reporter though there were the clerk's minutes, a rather sketchy account of the proceedings. In a habeas corpus proceeding petitioner Martinez averred that he was unaware of what rights he agreed to forego due to his lack of ability in the English language. The court held that where the habeas corpus record failed to show a waiver of the recording of the proceedings and there is no explanation for the failure to have a recording of such proceedings, petitioner was deprived of constitutional due process. A new trial was ordered.

The common thread running through the surveyed United States Supreme, Federal and State Courts' decisions which have dealt with the problem is that, while a transcript per se is not an absolute due process necessity, there must at least be an equivalent "picture" of what transpired below.

The facts of the instant case preclude any contention that Anderson has such an "adequate. alternative," that is, he or his counsel could have utilized the Statute of Westminster 2d (13 Edward I, Chapter 31) which is still extant in Pennsylvania. See *Commonwealth ex rel. Turk v. Ashe,* 167 Pa. Superior Ct. 323, 74 A. 2d 656 (1950). Under this statute trial errors are preserved by writing out the questions alleged to be objectionable, the objection entered, the answer of the witness, the court's ruling thereon; and that part of the court's charge alleged to be erroneous and the exception taken. After this record is completed, the trial court affixes its seal and submits it as part of

the record for review on appeal.[1]  The flaw in such a position is that this alternative has not been followed herein, and we cannot see how it can be done effectively now.  Anderson's trial counsel is now out of the case,[2] and his appellate counsel is faced with an impossible task; thus we will be precluded from determining if trial errors were committed or if the evidence supports the convictions.  Under such circumstances, Anderson, through no fault of his own, has been deprived of a meaningful appeal and fairness compels the grant of a new trial.

The present case differs substantially from *Commonwealth v. Banks,* 428 Pa. 571, 237 A. 2d 339 (1968).  Therein the trial proceedings were stenographically recorded but not transcribed.  Nothing was done until twenty years later when the defendant, for the first time, sought a review of his conviction.  In the intervening years, the trial stenographer had died and his notes could not be transcribed.  In *Norvell v. Illinois,* 373 U.S. 420, 83 S. Ct. 1366 (1963), a similar situation was presented and the court ruled that denial of relief under such circumstances was not a violation of due process.

It is presently unnecessary to reach the effective counsel issue.

The order of the Superior Court and the judgments of the court of original jurisdiction are reversed, and a new trial is ordered.

---

[1] We note without passing upon its merits that, while the Statute of Westminster 2d will preserve for the purpose of appellate review any exceptions taken, it is of no aid when the contention on appeal concerns the sufficiency of the evidence which supported the verdict.

[2] After the jury's verdict was recorded, Anderson's trial counsel requested four days time to file post-trial motions.  The trial court responded: "Why you have no record here."  Counsel did nothing further.

Mr. Chief Justice BELL and Mr. Justice JONES concur in the result.

Mr. Justice COHEN took no part in the decision of this case.