J-S16022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL MOORE | : | |
| | : | |
| Appellant | : | No. 1548 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 15, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0014634-2013,
CP-51-CR-0014635-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL MOORE | : | |
| | : | |
| Appellant | : | No. 1553 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 15, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0014634-2013,
CP-51-CR-0014635-2013

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED OCTOBER 12, 2021**

Michael Moore appeals from the judgment of sentence imposed on his convictions for numerous crimes: two counts each of Rape of a Child, Involuntary Deviate Sexual Intercourse ("IDSI") – Person Less Than 16 Years

_____

[*] Former Justice specially assigned to the Superior Court.

of Age, Unlawful Contact with a Minor, Statutory Sexual Assault, Sexual Assault, Corruption of Minors, Indecent Assault by Forcible Compulsion, Indecent Exposure, and Terroristic Threats With Intent to Terrorize Another.[1] Moore argues that he cannot obtain adequate appellate review due to the unavailability of his trial transcript and that he is therefore entitled to a new trial. We affirm.

The trial court set forth the following statement of the factual and procedural background of this case in its Statement in Absence of Transcript.

> 1. On January 9, 2015, a waiver trial was held before this [c]ourt. On January 13, 2015, this [c]ourt found [Moore] guilty of all charges on both dockets (CP-51-CR-00014634-2013, CP-51-CR-0014635-2013).[1] Sentencing was deferred for a pre-sentence investigation report, a mental health evaluation, and a Megan's Law Assessment to be completed.
>
>> [1] This [c]ourt found [Moore] guilty of two counts each of Rape of a Child (18 Pa.C.S. § 3121(c)); IDSI Person Less Than 16 Years of Age (18 Pa.C.S. § 3123(a)(7); Unlawful Contact with a Minor (18 Pa.C.S. § 6318(a)(1)); Statutory Sexual Assault (18 Pa.C.S. § 3122.1); Sexual Assault (18 Pa.C.S. § 3124.1); Corruption of Minors (18 Pa.C.S. § 6301(a)(2)); Indecent Assault by Forcible Compulsion (18 Pa.C.S. § 3126(a)(2)); Indecent Exposure (18 Pa.C.S. § 3127(a)); and Terroristic Threats with Intent to Terrorize Another (18 Pa.C.S. § 2706(a)(1)).
>
> 2. On June 15, 2015, [Moore] was sentenced to a total of seven to eighteen years of state incarceration.[2]
>
>> [2] [Moore] was sentenced to seven to eighteen years of incarceration on the charge of Rape of a Child. The charges of IDSI Person Less Than 16 Years of Age,

---

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(a)(7), 6318(a)(1), 3122.1, 3124.1, 6301(a)(2), 3126(a)(2), 3127(a), and 2706(a)(1), respectively.

statutory Sexual Assault, and Sexual Assault merged with the charge of Rape of a Child. Defendant was sentenced to ten years of probation on the charge of Unlawful Contact with a Minor, five years of probation on the charges of Indecent Assault by Forcible Compulsion, Indecent Exposure, and Terroristic Threats, and one year of probation on the charge of Corruption of Minors. All probation was ordered to run concurrently.

3. The notes of testimony from the January 9, 2015 waiver trial are unavailable and will not become available.

4. This [c]ourt's sentencing orders are attached collectively as "Exhibit A."

5. At docket number CP-51-CR-14365-2013, the victim ("T.G.") testified that [Moore] sexually abused him on one occasion when he was nine or ten years old. T.G.'s date of birth is [in April 1996]. According to T.G., [Moore] sexually abused him in the living room of the foster home where T.G. resided with his brother and sister. [Foster Mother] was T.G.'s foster mother.

6. T.G. testified that [Moore] asked him if he wanted to watch a movie. During this time, other people were asleep in the house. When T.G. went to [Moore]'s room to watch the movie, [Moore] began kissing him. T.G. then went downstairs to the living room, where [Moore] instructed him to lie face down on the floor. [Moore]'s penis touched his buttocks. [Moore] removed his own clothing, lifted T.G. up a little bit, and bent his knees. [Moore] then inserted his penis into T.G.'s buttocks. T.G. was unable to see [Moore]'s penis because it was dark. [Moore] threatened to hurt T.G.'s brother and sister if T.G. told anyone. Afterwards, [Moore] pulled up his pants and went back upstairs. T.G. waited about ten to fifteen minutes then returned upstairs to go to sleep.

7. Following the incident, T.G. had trouble sitting down. Because T.G. was afraid, he also tried to run away and attempted suicide.

8. [Foster Mother] took T.G. to Germantown Crisis Center, where he remained for two weeks. He was then relocated to a different foster home, separated from his siblings.

9. When T.G. was seventeen years old, he disclosed the abuse to his mother, [G.S.] T.G.'s disclosure occurred approximately two months after his brother, M.G., disclosed to their mother that [Moore] also sexually abused him.

10. Detective Erin Hinnov from the Special [Victims] Unit spoke to T.G. at his mother's house and wrote down what T.G. relayed to her.

11. T.G.'s statement is attached as "Exhibit B."

12. At docket number CP-51-CR-14634-2013, the victim ("M.G.") who is T.G.'s biological brother, testified that [Moore] sexually abused him on two occasions after T.G. left the foster home. M.G.'s date of birth is [in September 1998]. M.G. resided at [Foster Mother's] house from February 2006 to March 2007.

13. The first incident took place when M.G. and his sister were eating lunch at a table. [Moore] told them whoever finished lunch first could play games. [Moore] took M.G. to his bedroom to play PlayStation 2. [Moore] lay on the bed and pulled down his pants. [Moore] then told M.G. to suck on his penis or else he would do things to M.G.'s sister. [Moore]'s penis went inside of M.G.'s mouth, however M.G. could not recall how long it lasted. [Moore] instructed M.G. to remove his pants and lie on his stomach. M.G. complied. [Moore] then got on top of M.G. and placed his penis in M.G.'s buttocks. M.G. testified that it hurt. After the incident, [Moore] went back downstairs.

14. The second incident was shorter than the first. While M.G. was lying on his back, [Moore] sat on his bed and placed his penis inside of M.G.'s mouth and urinated. M.G. spit out the urine and ran out of the room.

15. Because he was frustrated and confused, M.G. began to act out. He never spoke to T.G. about being sexually abused by [Moore], however he disclosed the abuse to his mother when he was fourteen years old.

16. M.G. was taken to Philadelphia Children's Alliance, where he met with Detective Hinnov. He did not wish to speak about the abuse because he was embarrassed. On July 24, 2013, M.G. was reinterviewed by Detective Hinnov and provided a statement.

17. M.G.'s statement is attached as "Exhibit C."

18. [G.S.] is the biological mother of T.G. and M.G. She testified that when M.G. was in the eighth grade, he wrote an essay that caused the school counselor to contact her. M.G. no longer felt safe and began to cry. At this point in time, both T.G. and M.G. were living with [G.S.] The Philadelphia Department of Human Services ("DHS") contacted [G.S.] and came to her house to speak with M.G. It was at this time that that T.G. stated that [Moore] abused him first.

19. M.G.'s assignment is attached as "Exhibit D."

20. The parties entered into a stipulation that Detective Erin Hinnov from the Special Victim's Unit became aware of the allegation in May of 2013. An interview conducted by Philadelphia Children's Alliance took place on May 13, 2013. On July 1, 2013, Detective Hinnov interviewed T.G. On July 24, 2013, she reinterviewed M.G.

21. [Moore] testified in his own defense. His date of birth is [in September 1986]. [Moore] began living at [Foster Mother's] house when he was between eleven and twelve years old. [Moore] went to Elwyn for four years until he was sixteen years old. He returned to [Foster Mother's] home and resided there from sixteen to twenty-seven years old.

22. [Moore] denied sexually abusing either T.G. or M.G. and testified that they were lying.

Trial Ct. Statement in Absence of Transcript, filed 9/1/20, at 2-5 (footnotes in original).

The court sentenced Moore on June 15, 2015, to an aggregate term of seven to 18 years of incarceration, as well as an aggregate term of ten years of probation. Following reinstatement of Moore's direct appeal rights *nunc pro tunc*, Moore filed the instant, timely appeal.

In this Court, Moore moved for a remand because transcripts of his trial are not available (the sentencing transcript, however, is in the certified record). According to Moore, the court reporter's laptop containing the transcripts was stolen and the reporter was unable to obtain the transcripts from back-up files. We granted the application and directed the trial court and the parties to proceed pursuant to Pa.R.A.P. 1923 (statement in absence of transcript) to reconstruct the proceedings.

On remand, the trial court provided its notes to both Moore and the Commonwealth, and Moore prepared a Rule 1923 statement. The Commonwealth filed a response that adopted the facts as set forth in the trial court's notes and added information from the trial prosecutor. The trial court then filed a Statement in Absence of Transcript and issued a Pa.R.A.P. 1925(b) order. Moore filed a Rule 1925(b) statement, and the case returned to this Court.

The statement of questions involved in Moore's appellate brief reads:

A. [Moore] has been denied adequate post-sentence and appellate review of the judgment of sentence due to the unavailability of the trial transcript, thereby necessitating a new trial.

1. Was the verdict against the weight of the evidence?

2. Was the verdict insufficient to support the verdict?

3. Were there errors regarding the admission of evidence at trial that constituted an abuse of discretion?

4. Did [Moore] voluntarily, knowingly, [and] intelligently waive his constitutional right to a jury trial?

Moore's Br. at 7.

However, the argument section of his brief includes no developed argument on any weight, sufficiency, evidentiary, or jury waiver claims. Rather, he cites those issues as questions that he claims we cannot meaningfully review on appeal without the trial transcripts. **See** Moore's Br. at 8-9. Furthermore, the jury waiver and evidentiary claims are not in his Rule 1925(b) statement. Akin to his brief, Moore's Rule 1925(b) statement only mentions those issues as examples of issues for which appellate review cannot be meaningfully had without the transcripts. Indeed, neither his Rule 1925(b) statement nor his brief identifies any particular evidentiary ruling that was allegedly improper. Thus, the only claim properly before us is Moore's argument about the missing transcripts. All other claims are waived.

Regarding the transcripts, Moore argues that their absence makes meaningful appellate review impossible and that in fairness, we should grant him a new trial. He flatly contends that the lack of a trial transcript renders review of any sufficiency or weight claim, or evidentiary challenge, impossible. **Id.** at 8. He maintains that the sentencing transcript demonstrates his "severe intellectual and mental health issues," which he claims "call[] into question" the propriety of his jury waiver. **Id.** at 9. He argues, however, that the lack of a transcript or any other record of an oral colloquy makes it impossible for us to review the propriety of the waiver.

In cases where meaningful appellate review is impossible due to no fault of the appellant, a new trial may be granted. **Commonwealth v. Harvey,** 32 A.3d 717, 721 (Pa.Super. 2011). However, "[m]eaningful review does not

require, *per se*, a complete trial transcript." ***Id.*** (quoting ***Commonwealth v. Burrows***, 550 A.2d 787, 789 (Pa.Super. 1988)).[2] Rather, "the court may provide either a complete trial transcript or an equivalent thereof." ***Id.***

Pursuant to Rule of Appellate Procedure 1923, if a transcript "is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including [the appellant's] recollection." Pa.R.A.P. 1923. The appellant must serve the statement on the appellee, who may within ten days thereafter "serve objections or propose amendments" to the appellant's "statement of the evidence or proceedings." ***Id.*** Any objection or proposed amendment then goes to the trial court "for settlement and approval," and the court clerk must include the statement "as settled and approved" in the record on appeal. ***Id.*** "The theory that underlies Rule 1923 is that a verbatim transcript of proceedings is not necessarily a condition precedent to meaningful appellate review, so long as the appellate court has an 'equivalent picture' of what happened at trial." ***Harvey,*** 32 A.3d at 721 (citing ***Commonwealth v. Anderson***, 441 Pa. 483, 272 A.2d 877 (1971)).

Moore is not entitled to relief. His argument on appeal amounts to a facial attack on Rule 1923. He has not identified on appeal anything specific to his case about the court's Rule 1923 statement that impairs our ability to

---

[2] ***See also Commonwealth v. Lesko***, 15 A.3d 345, 410-11 (Pa. 2011) ("[T]he absence of notes does not generate some instantaneous, meritorious claim for relief.").

conduct appellate review. Instead, he simply asserts that without trial transcripts, "it is impossible to intelligently review" weight and sufficiency challenges. Moore's Br. at 8-9.

He similarly contends that the lack of transcripts fatally hinders our review of evidentiary rulings. But he makes this claim without ever specifying any allegedly improper evidentiary ruling. The closest he comes is when he says his "intellectual and mental health history calls into question" his jury waiver, and states that he "challenges the knowing, voluntary, and intelligent nature of his [waiver of] his right to a jury trial." *Id.* at 9. However, he does not claim that he was incompetent at any relevant time or that no proper colloquy took place at all. He in fact acknowledges that he signed a jury waiver form but does not claim that it was infirm in any way. Instead, he contends that resolution of any challenge to the waiver is not possible without the transcript. Moore's Br. at 9.

To the extent Moore claims to challenge his jury waiver as not knowing, intelligent, and voluntary, his claim is waived as undeveloped. Moore fails to make a supported argument that the waiver was improper, and indeed, a written waiver can be a sufficient means of waiving the right to a jury. *See Commonwealth v. Mallory*, 941 A.2d 686, 697 (Pa. 2008).

In the end, his argument boils down to a contention that Rule 1923 cannot ever produce a substitute for a transcript sufficient to enable appellate review. We disagree. Rule 1923 is adequate to the task of producing an "equivalent picture" of what happened at trial, at the very least in some cases.

We have in fact previously concluded that Rule 1923 provided an adequate means for creating an adequate substitute record. We have found waiver in at least one case where an appellant failed to follow Rule 1923 to reconstruct a missing portion of a record. *See Commonwealth v. Knighten*, 742 A.2d 679, 683 (Pa.Super.1999). By implication, we must have considered Rule 1923 facially adequate to allow the creation of a substitute record sufficient to allow appellate review.

In another case, we rejected a defendant's claim that he was entitled to a new trial because the approved Rule 1923 statement was allegedly insufficient to allow appellate review. We pointed out that defense counsel explicitly stated that she had limited the resources she consulted to reconstruct the record. She had not attempted to consult with all available resources to reconstruct the transcript, including the district attorney's office, the trial judge, and the defendant. We explained that in so doing, she had not followed Rule 1923's requirement that she use the "best available means" to recreate the record. *See Harvey*, 32 A.3d at 722-23. In other words, Rule 1923, if properly followed, can produce a substitute record adequate to allow meaningful appellate review. Moore's argument fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2021