**Warren Carl SHERRICK, Appellant,**

v.

**Frank A. EYMAN, Warden, Arizona State Prison, Appellee.**

**No. 21876.**

United States Court of Appeals Ninth Circuit.

Feb. 7, 1968.

Rehearing Denied March 29, 1968.

Ely, Circuit Judge, dissented in part.

---

Arizona. His conviction was affirmed by the Supreme Court of Arizona. State v. Sherrick, 98 Ariz. 46, 402 P.2d 1 (1965). His petition to the Supreme Court of the United States for a writ of certiorari was denied. Sherrick v. Arizona, 384 U.S. 1022, 86 S.Ct. 1938, 16 L.Ed.2d 1024. He filed, in the United States District Court for the District of Arizona, a petition for a writ of habeas corpus. That court held a hearing and took the case under advisement. At that point the petitioner's attorney requested the court to consider a ground, additional to the two grounds asserted in the petition, for granting the writ of habeas corpus. The court refused to grant that request unless the petitioner would first petition the Supreme Court of Arizona for a writ of habeas corpus on that ground. The petitioner did file such a petition, and the Supreme Court of Arizona denied it. Then the petitioner filed an amended petition in the United. States District Court, which amended petition included the two grounds asserted in the original petition and the third ground referred to above.

As amended, Sherrick's petition stated, as the grounds upon which the court should issue the writ of habeas corpus, (1) that an involuntary confession had been used against him at his trial; (2) that illegally obtained evidence had been used against him at his trial; (3) that the trial court summarily denied him a pre-trial mental examination to determine whether he was competent to stand trial and assist in his defense.

Gerald Francis Sullivan (argued), Phoenix, Ariz., for appellant.

Norval Jespersen (argued), Asst. Atty. Gen., Darrell F. Smith, Atty. Gen., James S. Tegart, Asst. Atty. Gen., Phoenix, Ariz., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and DUNIWAY and ELY, Circuit Judges.

MADDEN, Judge:

The appellant Sherrick, hereinafter called the petitioner, was convicted of first degree murder in a state court of

The Supreme Court of Arizona in affirming petitioner's conviction, State v. Sherrick, 98 Ariz. 46, 402 P.2d 1, supra, narrated the events leading to petitioner's conviction. Briefly paraphrased, they were that the body of the owner of a bar was discovered in his bar at 4:30 a. m. on May 24, 1962; that he had been shot twice in the back of the head; that all the money had been removed from the cash register and a "tip glass" of unusual shape, the contents of which glass were bent coins and coins marked with fingernail polish, and a billfold which had been in the possession of the victim, had been

taken. On May 28 the landlady of an apartment house not far from the place of the homicide found, in an apartment which the petitioner had rented for a week but had moved out of on May 26, a glass resembling the "tip glass" which had been stolen from the bar of the victim of the homicide. In the glass was a quarter with fingernail polish on it. The lady gave these items to the police. The next day, May 29, at about 3 p. m. the police arrested the petitioner, took him to the police station and interrogated him, and he confessed to the crime. At 4:47 p. m. a court reporter took down his confession. A key which petitioner had emptied out of his pocket at the police station indicated that he had been, since he moved out of his former apartment, living at an East Thomas Road apartment under the name of Jim Meyers, and the petitioner verified that fact to the police. He ad-·mitted that he had, at the former address, possession of the odd-shaped glass which the police showed him. He gave Sergeant Nealis of the police his consent for the police to search the East Thomas Road apartment. However, Sergeant Nealis thought it would be wise to obtain a search warrant and sent Sergeant Wilson to get it, giving Sergeant Wilson the information which he, Sergeant Nealis, had from his interrogation of the petitioner and from the objects in the possession of the police. An affidavit was prepared and executed by Sergeant Wilson, who then went to a magistrate and requested a warrant. The magistrate put Sergeant Wilson under oath and obtained information from him additional to what was stated in the affidavit. The magistrate then issued the warrant. The apartment was searched and the pistol which was introduced at the trial as the murder weapon and the billfold which had been taken from the victim of the homicide and was also introduced in evidence were found there.

Before the murder trial, defense counsel made a motion to suppress the evidence which had been obtained in the search of petitioner's East Thomas Road apartment. During the trial a special hearing on the voluntariness of the confession was held in the absence of the jury. The petitioner was given the opportunity to testify in this special hearing, without waiving his right not to take the witness stand in the presence of the jury.

The asserted ground for exclusion of the confession was that it was not made voluntarily. Petitioner argues in this appeal that the failure of the police to give petitioner all of the warnings required by the Supreme Court's opinion in the case of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), taken in connection with other relevant circumstances, made the confession involuntary and therefore inadmissible. The petitioner concedes that the Supreme Court's decision in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), makes the lack of the Miranda warnings, standing by itself, insufficient to show involuntariness in this case, which was tried in 1962. As we have said, he urges only that the lack of the Miranda warnings, plus the circumstances of this case tending to show coercion, made the confession involuntary. He relies on Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).

■ The petitioner's difficulty in this regard is that there weren't any circumstances tending to show coercion in fact. Although, as we have said, a hearing out of the presence of the jury on the question of voluntariness of the confession was held during the murder trial and the petitioner testified at that hearing, nothing of significance was shown at the hearing. The petitioner, on cross-examination by the prosecuting attorney, testified as follows:

Q. Did Mr. Nealis or Mr. Brady use any force on you?

A. No sir, they did not.

Q. Did they make any promises?

A. No sir, they did not.

Q. Did they make any threats?

A. No.

Q.  They treated you very nicely?

A.  Yes, they did.

Q.  And in spite of the circumstances here, I think you will go along with the fact that both Brady and Nealis treated you like a man?

A.  They treated me like a man, yes, sir.

It is significant that petitioner, in his appeal of his conviction to the Supreme Court of Arizona, did not raise any question as to the voluntariness of his confession. That court, however, gave attention to voluntariness because of the possible relation to the questions of probable cause for the issuance of the warrant and the petitioner's consent to the search, which questions are discussed hereinafter. The court said, "The record on this point [voluntariness of the confession] clearly shows it was made voluntarily, * * *."

There is no merit in the petitioner's contention that the admission of his confession was a violation of a constitutional right.

■■ We consider now the petitioner's contention that evidence obtained by an unconstitutional search and seizure was admitted at his murder trial. The evidence was, as we have said, the pistol asserted by the police to be the murder weapon and the wallet which had been taken from the murdered man. When the search was made, the petitioner was in the custody of the police, having been lawfully arrested, and was being interrogated. The Supreme Court of Arizona, on the petitioner's appeal to that court from his conviction, held the search and seizure lawful on two grounds. One of those grounds was that the petitioner consented to the search. The reporter's transcript of the petitioner's confession contains the following colloquy between the petitioner and his interrogator:

Q.  Where is the gun?

A.  As far as I know, it's home unless the boys have got it. Your boys.
    * * *

Q.  You say the gun and the empty shell casings are probably still in the gun?

A.  Yes, as far as I know they are.

Q.  And is there anything else at your house, at your apartment, that came from the bar?

A.  The billfold.

Q.  His billfold? This would be the man's that you shot billfold?

A.  Yes.

One of the policemen testified that the petitioner orally consented to a search of his apartment by the police. The petitioner, in the pre-trial hearing concerning suppression of the items seized in the search, denied that he had given his consent. The Supreme Court of Arizona recognized that an asserted waiver of a constitutional right must be proved by the prosecution by clear and positive evidence. But the court said that the testimony of the policeman, which the trial court believed, was "clear and positive evidence in unequivocal words," and therefore sufficient. The court said, and we agree, that the fact that the petitioner readily made a full confession of the crime was consistent with his consenting to the search, "particularly where the evidence of its [the confession's] voluntariness is so strong." We add that the colloquy quoted above in which the petitioner told his interrogator that the gun and the wallet were in his apartment would be inconsistent with a desire to maintain the privacy of his dwelling. We agree with the Arizona court that the search was legal because the petitioner consented to it.

The other ground which the Supreme Court of Arizona held justified the search was that the police obtained a warrant for it. We have, earlier in this opinion, recounted the events connected with the issuance of the warrant by the magistrate. The petitioner says that because insufficient facts to show probable cause for a warrant were contained in the policeman's affidavit accompanying his application for a warrant the warrant issued by the magistrate was invalid. The Supreme Court of Arizona held that the

fact, as testified to by both the policeman and the magistrate, that the magistrate examined the policeman under oath "to determine if there's probable cause for the warrant to issue" and then issued the warrant, satisfied the requirement of the Fourth Amendment that " * * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation * * *." The court discussed the teachings of Aguilar v. State of Texas, 378 U. S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The court then said:

> The testimony of the police officers and the magistrates indicates that information was given to the magistrate under oath in addition to the affidavit. This procedure differs from that under Rule 41(c), Federal Rules of Criminal Procedure where the affidavit is the sole basis upon which the determination of probable cause is made. If we had before us only the affidavit we would undoubtedly be bound to conclude under the case of Aguilar v. State of Texas, supra, that it was insufficient. It would have been advisable for the magistrate to have a transcript made of the officer's testimony, which he gave in addition to the affidavit, and he should have recited on the record what facts presented to him constituted "probable cause." This deficiency we do not deem fatal under the circumstances herein as there is evidence in the record showing what was presented to the magistrate prior to the warrant in question being issued.

■ We think the Supreme Court of Arizona was right. The Fourth Amendment does not require that the oath or affirmation of the truth of the statements of facts constituting probable cause must be attached to a written document. The purpose of the Fourth Amendment, to interpose a neutral judicial officer between the zeal of the policeman and the privacy of the citizen, is served by the examination of the policeman, under oath, by the magistrate. As the Supreme Court of Arizona said, it would have been advisable for the magistrate to have proceeded differently in this case. But our question is not whether what was done was advisable, but only whether it was constitutional. We hold that it was.

The third ground for a writ of habeas corpus presented by the petitioner in this case is the refusal of the Arizona trial court, prior to petitioner's murder trial, to grant the motion of his attorneys in that trial requesting a hearing pursuant to Rule 250 of the Arizona Rules of Criminal Procedure, 17 A.R.S. Rule 250, in effect, provides that if, before or during a trial, the court has reasonable ground to think that the defendant is insane or mentally defective to the extent that he is unable to understand the proceedings against him or to assist in his defense, the court shall hold a hearing to determine the defendant's mental condition, and may appoint two disinterested qualified experts to examine the defendant and to testify at the hearing; that other evidence may be introduced at the hearing; that if the court decides that the defendant is competent the trial will proceed; if the court decides to the contrary, the defendant shall be committed to a mental institution until the institution reports that he is competent to be tried.

The motion of the petitioner's attorneys was accompanied by affidavits of the attorneys which said, so far as here pertinent:

> 3. That they [the affiants] are without sufficient knowledge or information to form a belief as to whether defendant properly understands the proceeding against him or can aid counsel in his defense.

> 4. That in the opinion of affiants two disinterested medical experts should be appointed by the court to examine defendant in regard to his mental condition to promote the cause of justice.

When the motion for a hearing on the petitioner's mental condition was made by the petitioner's attorneys before the murder trial, there was a colloquy between the court and the one counsel who was present. Since the affidavit present-

ed no facts bearing on the petitioner's mental condition, the court repeatedly asked counsel questions seeking to elicit facts, such as this question: "Tell the court what you observed and what facts you know that give rise to your conclusion that there may be something wrong with him mentally?" The nearest approach of the attorney to an answer to this question was the statement, interspersed among unresponsive statements, "He doesn't seem to cooperate with me fully. He is morose, and I don't believe he gives me the cooperation a normal person would under the circumstances." The trial judge would have been aware that moroseness is hardly abnormal in a prisoner who has committed a murder, has made a detailed confession, and is now about to go on trial. Petitioner's counsel persisted in the statement made in his affidavit that he had no knowledge or information which would justify him in having or expressing a belief as to whether the petitioner properly understood the proceeding against him or could aid counsel in his defense.

█ The court denied the motion. We think the court was right. We are, of course, not expressing any opinion with regard to the court's reading of the Arizona Rule 250, cited supra. We are deciding that the trial court's denial of the motion for a hearing, in the circumstances confronting the court, was not a denial of the constitutional guaranty of due process of law, which of course includes a fair trial. In appealing the petitioner's conviction to the Supreme Court of Arizona, petitioner's then counsel did not base any claim of error on the trial court's ruling which we are now discussing. It is fair to say that if, in the circumstances of the instant case, the trial court had a constitutional duty to set up a hearing concerning the petitioner's mental competence, there is such a duty in every case in which counsel requests such a hearing, and the responsibility of the court to keep its procedures rational and useful is transferred from court to counsel.

The case of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), relied on by the petitioner, is readily distinguishable. In that case significant evidence of incompetence became manifest during the trial. In the recent case of Rhay, Superintendent v. White, 385 F.2d 883, decided November 28, 1967, this court held that the United States District Court was right in issuing an order against the custodian of a state prisoner because "there were facts before the [state trial] court of such substantial significance as should have compelled the trial court * * * to have recessed the trial and conducted a hearing upon the question of whether the petitioner was mentally competent to give aid and assistance to his counsel and participate in his own defense."

In the instant case there were no significant facts before the Arizona trial court or before the United States District Court in this habeas corpus proceeding which even suggested that the hearing requested by the petitioner would be useful.

The judgment of the United States District Court dismissing the petition for a writ of habeas corpus was right and is affirmed.

ELY, Circuit Judge (dissenting in part):

I concur in the result reached by the majority, and I do not quarrel with most of the reasoning which produces it. I do, however, sharply disagree with that portion of the majority opinion in which the validity of the search warrant is upheld.

Before the trial was held in the Arizona state court, a hearing was conducted pursuant to Sherrick's motions to suppress certain evidence which had been seized in the search conducted pursuant to the warrant. During the hearing, the police officer who obtained the search warrant testified as follows:

"Q The Judge didn't examine you as to why you wanted the search warrant?

"A He asked me several questions and read over the warrant.

"Q Then he signed it for you?

"A Yes."

In the testimony of the magistrate who issued the search warrant, there appears the following:

"Q What is the procedure when you issued the search warrant?

"A First I examined the officer under oath, to see if there's probable cause, to determine if there's probably cause for the warrant to issue. Then I had him sign in my presence under oath."

Neither the police officer nor the magistrate testified, or apparently could testify, as to the nature of any unrecorded information which might have been given to or received by the magistrate and which might have supplied the requirement of probable cause.

When the question of the validity of this search warrant was presented to the Supreme Court of Arizona, that court conceded that it would be compelled, upon the authority of Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), to hold that the affidavit, of itself alone, was insufficient to support issuance of the warrant. There can be no doubt that this conclusion was correct.[1] The Arizona Supreme Court went on, however, to uphold the validity of the warrant upon the assertion that "[t]he testimony of the police officers and the magistrates indicates that information was given to the magistrate under oath in addition to the affidavit." State v. Sherrick, 98 Ariz. 46, 53, 402 P.2d 1, 6 (1965) (footnote omitted). It is true that there is such an indication, but since the record is devoid of evidence as to the nature of any such additional information given to the magistrate, the Arizona court could not, of course, supply it.

The Supreme Court has held that "[i]n determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." Elkins v. United States, 364 U.S. 206, 223–224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960). As the Arizona Supreme Court correctly remarked, the affidavit presented to the magistrate was insufficient to support the warrant's issuance. Aguilar v. State of Texas, supra; Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933). Our court is faced, therefore, with only a mere conclusion by the magistrate and by the Arizona Supreme Court that the information supplied in oral form to the magistrate was sufficient to provide probable cause to issue the warrant. We cannot consider that "information," however, for, like everyone else, we do not know what it was. And, of course, we cannot consider information not shown to have been communicated to the magistrate, even though that information was possessed by the police. "It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." Aguilar v. State of Texas, 378 U.S. 109 n.1, 84 S.Ct. 1511 (emphasis in original).

---

1. The text of the "AFFIDAVIT FOR SEARCH WARRANT" presented to the magistrate reads, in its entirety, as follows:

"Sgt. Evan Wilson, Phoenix Police Department being duly sworn, deposes and says that he has reason to believe that WARRAN SHERRICK (aka) JIM MYERS, has concealed upon his residence at Ingleside Apts., 4205 E. Thomas Road, certain property, namely Wallet; credit cards in name of Lewis A. Taylor; burglary loot: shotgun; radio; half case of whisky, property of A. L. Moore, also murder weapon and clothing, Springfield 30.06 rifle Serial #601128; full carton 30.06 Springfield shells; also one white purse with I.D."

As discussed infra, the testimony indicates that certain of the items on the list in this affidavit were added to it after the search warrant was granted, just as they were added to the search warrant itself after the search.

In *Aguilar* the Supreme Court emphasized that a magistrate issuing a search warrant must perform a " 'neutral and detached' function and not serve merely as a rubber stamp for the police." 378 U.S. at 111, 84 S.Ct. at 1512. Additionally, the Court stated that the reviewing court should uphold the "judicial determination" of probable cause so long as a "substantial basis" for that conclusion is present. 378 U.S. at 111, 84 S.Ct. at 1512 quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). It seems apparent to me that there could never be proper review as to whether there existed a "substantial basis" for the magistrate's "judicial determination" unless somewhere, in some manner, the "basis," whether "substantial" or insubstantial, appears upon the record. Here, as we have seen, it does not so appear. Its absence derives not only from the magistrate's failure to record the supposed basis, but also from the natural frailty of human recollection, in this case that of both the magistrate and the officer who sought and obtained the warrant. A court is disempowered to apply any proper test as to whether or not a magistrate has properly performed his duty unless his action can be measured, either by the contents of the "oath or affirmation" required by the fourth amendment, or if reliance is placed upon other information claimed to have been furnished to the magistrate, by a solid record of such additional information as was supplied.

Another striking irregularity connected with the search warrant relates to the fact that some of the items for which a search was authorized by the warrant were specifically added to the warrant after entry had been made, presumably under authority of the warrant, and after the items were then, for the first time, discovered.[2] I shall not dwell further upon this strange aspect of the procedure, nor upon others which trouble me, inasmuch as I have already demonstrated, I think, that the warrant was wholly invalid and ineffective.

2. In response to questioning by Sherrick's attorney, the police officer who obtained the search warrant and who participated in the actual entry and search testified as follows:

"Q But you did put some items on the search warrant after you found them in the premises?

"A That's right, sir.

"Q Your search warrant was not properly complete when you took it out? You had five items, and you had five more after you searched the premises?

"A As I recall, there were only two or three added.

"Q These items were added after you searched the premises?

"A That's right.

"Q The face of the search warrant would show you were looking for all these items listed on the search warrant?

"A Yes, there were a number of items on the search warrant we were looking for.

"Q And items were added to the search warrant after you found them?

"A Yes, sir.

"Q Isn't that a little bit irregular to add items to a search warrant after the items have been found? Is that not a fraud on the Court?

"THE COURT: That's two questions, Mr. Hoyle.

"Q In your opinion, is not that a fraud on the Court to add items on a search warrant?

"MR. SHAW: Your Honor, I object. He doesn't know whether it is or isn't.

"MR. HOYLE: I'll withdraw the question."