**Christopher BOYER, Petitioner-Appellant,**

v.

**STATE OF ARIZONA and Frank Eyman, Warden of Arizona State Prison, Respondents-Appellees.**

**No. 26673.**

United States Court of Appeals, Ninth Circuit.

Feb. 9, 1972.

Ely, Circuit Judge, dissented and filed opinion.

---

1. Teresa testified that the arrangement was for the payment of $60,000 in all for the $300,000 worth of stolen bills.

Harold Cole (argued), Joseph H. Soble, Soble & Cole, Tucson, Ariz., for petitioner-appellant.

William P. Dixon, Asst. Atty. Gen. (argued), Gary K. Nelson, Atty. Gen., Phoenix, Ariz., for respondents-appellees.

Before ELY and CHOY, Circuit Judges, and BYRNE, Sr.*, District Judge.

* The Honorable William M. Byrne, Sr., United States District Judge, Central District of California, sitting by designation.

1. The Supreme Court of Arizona considered and rejected his contention in State v. Boyer, 106 Ariz. 32, 470 P.2d 439 (1970).

2. The written affidavit submitted to the magistrate read as follows:
IN THE JUSTICE COURT
Flagstaff Precinct, County of Coconino, State of Arizona

State of Arizona,
            Plaintiff,

      v.

1956 Ford 2 Dr. Sta. Wagon-Lic. HCA 924 (Ariz) registered to Chris Boyer,
            Defendant.

CHOY, Circuit Judge.

Christopher Boyer, an Arizona prisoner, appeals the District Court's denial of his petition for habeas corpus. His sole contention is that the search warrant under which he was stopped, his car searched, and marijuana found in his possession seized was issued without probable cause.[1] The evidence thus seized was instrumental in his conviction of violation of Arizona Revised Statutes, §§ 36–1002.05 and 36–1002.07, subsec. A, possession and transportation of marijuana. The District Court found that while the written affidavit submitted to the Arizona magistrate did not set forth probable cause,[2] sufficient facts to constitute probable cause were supplied to the magistrate through oral testimony from the affiant officer. We agree and affirm.

On January 3, 1969, Officer Walter Hinson sought a warrant to search Boyer's car from Justice of the Peace James F. Brierley. He was accompanied by Officer Lloyd Jewell. Judge Brierley immediately placed Hinson under oath, and was told that a warrant was desired against Boyer's car because extensive personal surveillance by Hinson and Jewell indicated that Boyer was involved

AFFIDAVIT

Walt Hinson, being duly sworn, deposes and says that he has reason to believe, and does believe that a 1956 Ford 2 Dr. Sta. Wagon-Lic. HCA 924 (Ariz) registered to Chris Boyer has in possession upon those certain premises in said vehicle, with in Coconino County, Arizona certain property, with intent to use it as a means of committing a public offense, said property consisting of Marijuana, narcotics, any drugs and paraphernalia incidental thereto.

/s/ Walt Hinson

Subscribed and sworn to before me this 3rd day of January, A. D. 1969.

/s/ James F. Brierley

Justice of the Peace
of said Precinct.

in selling marijuana and an informant had told Hinson that Boyer would be driving a load of marijuana from Tucson to Flagstaff shortly after the Christmas vacation. Hinson did not identify the informer, but he told the magistrate that he considered the informer reliable because his description of Boyer and the car and his information about pot parties held at Boyer's home coincided with data independently gathered by the police. In addition, intelligence supplied by the informer subsequent to his giving information about Boyer's trip to Flagstaff and prior to the obtaining of the search warrant had proven completely accurate and reliable.

Hinson also told the magistrate that the informer's tip was based on personal knowledge and close association with Boyer. Finally, the magistrate learned that the informer had previously stolen marijuana from Boyer's car, that he had personally bought marijuana from Boyer, and that he knew of others who had made similar purchases.

■■ In determining probable cause for the issuance of a state warrant in Arizona, magistrates may consider not only the written affidavit but also any oral testimony given to them under oath by the affiant officer. Sherrick v. Eyman, 389 F.2d 648 (9th Cir. 1968); State v. Watling, 104 Ariz. 354, 453 P.2d 500 (1969). However, the standards laid down by the United States Supreme Court in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) are fully applicable. Since the informer's tip here was a necessary element in the determination of probable cause, it must be examined to determine if it, alone, withstands the *Aguilar* tests. *Spinelli, supra,* at 415, 89 S.Ct. 584. " . . . [T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable'." *Aguilar, supra,* 378 U.S. at 114–115, 84 S.Ct. at 1514. Both these tests have been met in this case.

First, the magistrate had sufficient information to determine independently the reliability of the informer. The affiant officer told him of the investigations and conviction which had resulted from another tip from the same informer. He knew that the informer had given accurate information describing Boyer and his car and identifying the house where the police knew pot parties had been held. The magistrate was not told the informer's identity, or that the informer used marijuana while in jail at the time the warrant was issued. However, neither of these facts preclude a finding that the informer was "credible" and his information "reliable."

Second, the magistrate was given a sufficient statement of the underlying circumstances from which the informer concluded that Boyer was running a marijuana business. He knew that the informer was a close personal acquaintance of Boyer and had stolen and purchased marijuana from him. Even absent a clear statement of the method by which the informer gathered his information, the information covered Boyer's criminal activity in sufficient detail that the magistrate could "know that he [was] relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli, supra,* 393 U.S. at 416, 89 S.Ct. at 589.

We are not faced with a record devoid of the oral information which the affiant officer gave to the magistrate. It is clear that the magistrate was given enough information to make an independent determination that probable cause existed to issue the warrant.

Affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent.[1] To me, the manner in which the majority disposes of a highly significant constitutional issue is unacceptable.

In Sherrick v. Eyman, 389 F.2d 648 (9th Cir. 1968), we reviewed the Arizona search warrant issuance procedure that was here employed. I dissented from the majority opinion in that case because it held that certain unspecified oral "information," given to the magistrate by the affiant police officer at the time the warrant was requested could and, in fact, did "cure" the inadequacy of the officer's written affidavit. It was my opinion that the challenged procedure thwarted subsequent, independent, and adequate review of the basis for the issuance of a search warrant and was constitutionally infirm. 389 F.2d at 654. I wrote:

"It seems apparent to me that there could never be proper review as to whether there existed a 'substantial basis' for the magistrate's 'judicial determination' unless somewhere, in some manner, the 'basis,' whether 'substantial' or insubstantial, appears upon the record."

I still strongly adhere to that position. I do not believe that the constitutional requirements imposed upon government officers seeking warrants, see, e. g., Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), can be, in effect, overborne by the operation of state procedural law. That, however, is what the majority herein allows.

The shortcoming in the present case is not as egregious as it was in *Sherrick*, since, marking an improvement, there is *some* evidence of what the affiant officers told the magistrate. The problem, ignored by the majority, is, simply, that

that evidence is confused and unreliable. The majority opinion may be ready to imply that a transcript was made of the proceedings conducted when the warrant was requested. That is not the fact. The only evidence of what transpired when the warrant was issued is to be found in the transcript of Boyer's trial. During the trial, which was conducted in July, 1969, almost seven months after the search was authorized, the police officers and the magistrate testified. They related, as best they could, their memories as to the events of the January 3d proceeding. It is from this, alone, that the majority concludes, in effect, that there was a substantial basis for the issuance of the warrant.

The problem inherent in relying upon belated oral testimony to find that the existence of probable cause was demonstrated at an earlier hearing is obvious. Memories are blurred by the passage of time and by the wisdom gained through hindsight. Critical facts may be forgotten, and the possible initial uncertainty of the affiant may vanish when the search proves to be fruitful. Inadvertent additions to the remembered conversation are not unlikely.[2] Since we test the basis for search warrants in a common sense and realistic fashion, see United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), many of the errors which unwittingly appear in this type of testimony are harmless and we could, therefore, accept Arizona's procedure as being without prejudice to the defendants in most cases. But prejudicial errors can also occur, and *all* errors could be avoided by requiring the recordation of oral testimony received by the magistrate to supplement an affidavit for a warrant. I believe that the risk of error we are asked to ignore in this case places an in-

---

1. If I could find adequate reliable evidence of the facts outlined in the majority opinion, I would readily concur with that opinion. The procedures followed in this case, however, trouble me greatly.

2. Such possible additions are of critical importance, for "it is elementary that in

passing on the validity of a warrant the reviewing court may consider *only* information brought to the magistrate's attention." (*Emphasis in original.*) *Aguilar, supra*, at 109, n. 1, 84 S.Ct. at 1511, *citing* Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503, 1509–1510 (1958).

tolerable restriction upon our power effectively to review a magistrate's decision as to probable cause.

Here, the transcript, as presented to us,[3] proves the reality of the dangers that I have postulated. The police officers who had sought and obtained the warrant testified at length, with remarkable recall and certainty. As they recounted the proceedings, the information orally supplied by them to the magistrate clearly met constitutional standards. *See* United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar, supra.* In contrast, the testimony of the magistrate was less complete. Much of his testimony was weakened by qualification, such as "Well, it's pretty difficult [to recall], but", "As I recall", and "It's a little difficult to recall, but". To me, it appears that he strove to testify honestly; hence, his recollection of the unreported proceedings was, understandably, less than perfect.

The most significant aspect of the magistrate's difficulties in recalling the incident is the fact that, on the record before us, as the magistrate remembered the oral information supplied to him by the police, it was insufficient under *Harris, Spinelli,* and *Aguilar.* Those cases hold that when an application for a warrant is based upon an informer's tip, the existence of probable cause depends upon satisfaction of a two-part test. As the majority notes, the police must demonstrate to the magistrate

"some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which

the officer concluded that the informant . . . was 'credible' or his information reliable."

*Aguilar, supra,* 378 U.S. at 114, 84 S.Ct. at 1514.[4] Our limited record of the magistrate's testimony includes ample information showing that the informant was reliable, but it contains nothing which shows that the police revealed how or why the informant concluded "that the narcotics were where he claimed they were." Indeed, there is an indication that the police failed to do so:

"Prosecutor: Did [Officer Hinson] advise you of any other facts about the informant other than the informant being [sic] reliable and been used [sic] in another case?

[The Magistrate]: No. All I had was the statement that he was a reliable informant, [Officer Hinson] gave me the facts as to the—as to his reliability and that was accepted by me."

From this, it appears that, contrary to the majority's interpretation of the record, the magistrate was *not* advised as to how the informer acquired his information. Nor was he advised that the informer was a close personal friend of Boyer who had detailed factual information which would lead the magistrate to "know that he [was] relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on [the suspect's] general reputation."[5] If I am correct, the *Aguilar* test was not met in this case, the warrant should not have been issued, and the search was illegal.

The significant discrepancies between the proffered versions of the January 3d proceedings clearly mark the evil promoted by the Arizona procedure. In some cases, as here, it will be obvious that there is confusion as to what ac-

3. The record before this court of the testimony offered by the police officers and the magistrate is incomplete. It is, of course, the burden of the state to prove that there was sufficient evidence offered when the warrant was requested.

4. This test is explicitly recognized in *Harris* and *Spinelli.*

5. This is the test of "underlying circumstances" articulated in *Spinelli, supra,* 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 643–644 (1969). It is irrelevant that the police *could* have supplied such information. They must have actually done so. *See* note 2, *supra.*

tually transpired when the warrant was requested. In other cases, confusion may be obscured because of the absence of obvious discrepancies in the testimony of different people. But in either case, there exists a substantial possibility that a reviewing court will be induced to make a wrong decision. Such risks can be readily avoided without impairing law enforcement and with full protection of Fourth Amendment rights. I would hold that an affidavit in support of an application for a search warrant must, in and of itself, be sufficient, or that any sworn oral testimony presented to supplement a defective affidavit must be accurately transcribed at the time of its original presentation. Accordingly,

I would reverse.