Commonwealth *v.* Milliken, Appellant.

Submitted May 22, 1972. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Arthur K. Dils,* Public Defender, for appellant.

*Marion E. MacIntyre,* Deputy District Attorney, and *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, January 30, 1973:

Appellant Thomas Eugene Milliken was tried by a jury and convicted of first degree murder. Post-trial motions were denied and appellant was sentenced to life imprisonment. On this direct appeal appellant challenges the constitutionality of a search warrant issued on July 22, 1968,[1] and further contends that the Commonwealth failed to establish a corpus delicti. We find that the issuance of the search warrant comports with constitutional standards and the record supports a finding of a corpus delicti. We affirm.

On July 22, 1968, Detective Barbush, a member of the Harrisburg police force, submitted the following affidavit to the magistrate who ultimately made a finding of probable cause and issued the search warrant: "That on or about the 9th day of July, 1968, an informant namely Allen Lee Ricker, 17 years of age, of 96 North St., John's Road, Camp Hill, Cumberland County,

---

[1] Acting pursuant to the search warrant the police discovered certain identification cards and a piece of jewelry belonging to the deceased in appellant's apartment.

Pennsylvania, did see the above-described items [the dead person's alleged identification] at the aforementioned place while in the possession of one Thomas Eugene Milliken, the occupant of the said apartment, which information has been given to me, Detective Kenneth J. F. Barbush, and which I believe to be true and correct. These items are alleged to be the property of the unidentified female individual." In addition the police under oath informed the magistrate that the individual named in the warrant, Mr. Allen Ricker, had previously led the police to the body of the person allegedly murdered by appellant.

Appellant raises the troublesome question of whether sworn oral testimony by the affiant may validly supplement a written affidavit which by itself does not meet the constitutional standards announced in *Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509 (1964), and refined in *Spinelli v. United States,* 393 U.S. 410, 89 S. Ct. 584 (1969). Appellant contends that it was constitutionally impermissible for the magistrate to consider the oral testimony given under oath by the police in determining probable cause. He further argues that absent the sworn oral testimony, the magistrate did not have before him sufficient information from which he could make a finding that the police informant was reliable, a finding explicitly required by *Aguilar* and *Spinelli.*

This Court has recognized that the same standards for judging probable cause for a search warrant are applicable for determining probable cause to make an arrest. *Commonwealth v. Garvin,* 448 Pa. 258, 263, 293 A. 2d 33, 36 (1972); *Spinelli v. United States,* 393 U.S. 410, 417 n.5, 89 S. Ct. 584, 589 n.5 (1969). We further held in *Garvin* that "probable cause exists if the facts and circumstances which are within the knowledge of the officer at the time of arrest . . .

are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed a crime." 448 Pa. at 262, 293 A. 2d at 36.

When the officer's belief that the suspect has the fruits or evidence of a crime is based upon an informer's "tip" rather than upon the officer's personal knowledge or observation, the officer must have two types of information before probable cause is established. First, in order to assure that the "tip" is not merely an unsupported rumor, the officer must know the underlying circumstances from which the informer concluded that the suspect possessed the fruits or evidence of a crime. Second, in order to reduce the possibility that a "tip" meeting the first standard is merely a well-constructed fabrication, the officer must have some reasonable basis for concluding that the source of the "tip" was reliable. *Spinelli v. United States,* 393 U.S. 410, 415-16, 89 S. Ct. 584, 588-90 (1969); *Aguilar v. Texas,* 378 U.S. 108, 114-15, 84 S. Ct. 1509, 1514 (1964); *Commonwealth v. Matthews,* 446 Pa. 65, 70, 285 A. 2d 510, 512 (1971).

The argument that a proceeding culminating in the issuance of a search warrant must have all the supporting information reduced to writing is bottomed on the inherent difficulty of reviewing challenged unrecorded oral ex parte testimony. It is of course only too well-recognized that the "passage of time" inevitably causes "memories . . . [to] fade." *Dickey v. Florida,* 398 U.S. 30, 42, 90 S. Ct. 1564, 1571 (1970) (Justice BRENNAN concurring). Without a substantially complete record made contemporaneously with the issuance of the warrant, subsequent review of the partially unwritten proceeding may become tainted by possible additions of relevant information initially omitted but later supplied by hindsight.

Indeed this very problem is demonstrated here. A crucial question at the suppression hearing was wheth-

er in determining the reliability of the police informer the magistrate relied on the sworn oral testimony of the affiant. At the hearing, held several months after the issuance of the search warrant, Detective Barbush was initially unable to recall giving any oral testimony whatsoever. The magistrate, while acknowledging the existence of the sworn oral testimony, admitted that his memory was dimmed by the fact that the proceeding was "some time ago." It would have been far preferable had the proceedings before the magistrate been transcribed, or had the sworn oral testimony been otherwise reduced to writing, or had the police submitted only written and supplemental written affidavits for his consideration.

Despite the obvious desirability of having all the information before the magistrate in writing, we are not persuaded that the affiant's sworn oral testimony may not supplement his written affidavit and together supply the constitutional basis for the issuance of a search warrant. Appellant has been unable to cite any authority in support of his position and indeed the existing case law is to the contrary. See, e.g., *Boyer v. Arizona,* 455 F. 2d 804 (9th Cir. 1972) ; *Miller v. Sigler,* 353 F. 2d 424 (8th Cir. 1965) ; *Sparks v. United States,* 90 F. 2d 61 (6th Cir. 1937) ; *Commonwealth v. Crawley,* 209 Pa. Superior Ct. 70, 223 A. 2d 885 (1966), aff'd, 432 Pa. 627, 247 A. 2d 226 (1968). In the absence of any constitutional or decisional authority or procedural rule making impermissible the procedure here employed, appellant's claim for relief on this asserted ground must be rejected. In doing so we nevertheless express our preference for reducing to writing in some acceptable manner sworn oral testimony offered in support of the issuance of the search warrant.

We shall therefore, in exercise of our supervisory powers, formulate by rule of Court[2] appropriate procedural requirements of a sufficient written record made contemporaneously with the issuance of search warrants.[3] Because this issue is not one of constitutional proportions, the rule will be wholly prospective and thus not applicable to the case at bar.

Confining ourselves for a moment to the four corners of the written affidavit, it is manifest that it was insufficient to provide the magistrate with an evidentiary basis from which he could properly conclude that the information given to the police originated from a reliable source. In *Aguilar* the United States Supreme Court made it quite clear that "the magistrate must be informed of . . . some of the underlying circumstances from which the officer concluded that the [informants'] . . . information . . . [was] 'reliable.' " Id. at 114, 84 S. Ct. at 1514. Here the affidavit sets forth only the informer's name, unexplicated by any other information in the affidavit. This, by itself, cannot be said to meet the constitutional standards set forth in *Spinelli* and *Aguilar*.[4] If a police officer's sworn statement that the

---

[2] Constitution of Pennsylvania, Art. V, Section 10(c) ; see also the Act of July 11, 1957, P. L. 819, §3, 17 P.S. §2086.

[3] The promulgation of the written requirement will be accompanied by due notice of its adoption and its effective date. After the effective date of the rule determination of probable cause by a suppression hearing court and an appellate court upon review will be made *only* from the written record prepared contemporaneously with the issuance of the search warrant.

[4] The United States Supreme Court has recently noted that mere disclosure of the informant's identity would not meet the reliability standards mandated in *Aguilar*, supra, and *Spinelli*, supra. In *Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921-24 (1972), the Supreme Court upheld a stop-and-frisk based on the information conveyed to a policeman by a known informer, but went on to distinguish the higher and more exacting standards for determining probable cause for a search warrant: "Thus, while

informant is reliable is not sufficient basis to establish reliability, see *Aguilar*, it is difficult to perceive how the mere mention of the informant's name in the affidavit could possibly satisfy the constitutional requirements of *Aguilar* and *Spinelli*.[5]

Although we conclude that the affidavit standing alone was defective, we agree with the trial court's finding that the sworn oral testimony of the affiant provides the necessary "underlying circumstances" indicating reliability. Here the magistrate was orally informed by police testimony under oath that the named informer had in addition to the information contained in the search warrant given the police additional information which proved to be reliable. Specifically the informer had led the police to the body of an individual allegedly murdered by appellant. We conclude, as did the suppression court, that this sworn oral testimony supplied a proper evidentiary basis for the magistrate's finding that the information furnished to the police was reliable.

At the conclusion of the Commonwealth's evidence on corpus delicti appellant demurred. Appellant's sec-

---

the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or *search warrant*, see, e.g., Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964), the information carried enough indicia of reliability to justify the officer's forcible stop of Williams." (Emphasis supplied) (Justice REHNQUIST).

[5] It is of no moment that by naming the informer he may therefore be available at the suppression hearing. Probable cause to issue a warrant is determined by a "detached and neutral magistrate" at the time the warrant is issued, not by the possibility of some evidence from an additional witness at some later date in an ex post facto manner. *Johnson v. United States*, 333 U.S. 10, 13-14, 68 S. Ct. 367, 369 (1948) (Justice JACKSON). Nor is it persuasive to suggest that the identification of the informer by name gives the magistrate the opportunity to call the informer before him. This was not done here.

ond contention is that the trial court erred in overruling his demurrer. We do not agree. "The corpus delicti [in a murder prosecution] consists of proof that a human being is dead and that such death took place under circumstances which indicate criminal means or the commission of a felonious act. . . . Like other facts, it may be established by circumstantial evidence. . . ." *Commonwealth v. Frazier*, 411 Pa. 195, 202, 191 A. 2d 369, 373 (1963) (citations omitted); *Commonwealth v. Maybee*, 429 Pa. 222, 239 A. 2d 332 (1968).

Appellant concedes that the Commonwealth sufficiently established that skeletal remains discovered by the police were those of the alleged victim. To satisfy the second requirement that death resulted through criminal agency the Commonwealth offered testimony that when the deceased left her home she was in good health. The Commonwealth also established that a nylon stocking, two inches in diameter and fastened by a double knot, was tied around the deceased's neck vertebrae. The pathologist who performed the autopsy, although not able to categorically state the cause of death due to the severe decomposition of the body, testified that such a ligature around the neck of a normal person "would kill the person by suffocation, strangulation." Finally the Commonwealth proved that identification cards and jewelry belonging to the deceased were found in the possession of appellant by the police pursuant to the execution of the search warrant previously discussed.

Appellant argues that the Commonwealth's proof does not dispel the possibility that the deceased committed suicide. We have held, however, that the Commonwealth's proof need not exclude suicide. *Commonwealth v. Frazier*, 411 Pa. 195, 202, 191 A. 2d 369, 373 (1963). The evidence was sufficient to establish corpus

delicti, and the court properly overruled the demurrer.

The judgment of sentence is affirmed.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

I am unable to agree that the existence of probable cause as the pre-condition for the issuance of a search warrant, a basic constitutional requirement, can be satisfied by testimony given months later, after challenge to a warrant has been made, to the effect that the police officer orally and while under oath told the magistrate more than the supporting affidavit discloses. I therefore respectfully dissent.

No one disputes that the search warrant affidavit in the present case was constitutionally defective: it contained no indication whatever of the reliability of the unidentified informant. See, e.g., *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723 (1964) ; *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637 (1969) ; *United States v. Harris,* 403 U.S. 573, 29 L. Ed. 2d 723 (1971). Over four months after use of the warrant[1] a hearing was held on appellant's motion to suppress the evidence seized pursuant to the warrant. At this hearing the issuing magistrate and the police officer stated that the detective had given additional sworn testimony of reliability, namely, that the informant had led the police to the body of a person allegedly murdered by the accused. Assuming, arguendo, that this information was sufficient to supply the element of reliability, the question is whether the original deficiency of the warrant affidavit can be repaired in this manner. As indicated, I think not. I am persuaded that if the written and signed affidavit showing probable cause is not

---

[1] The warrant was issued on July 22, 1968; the suppression hearing was held on December 3, 1968.

able to stand on its own feet, any supplementation thereof in the form of sworn oral statements must be reduced to writing contemporaneously;[2] otherwise, the ex post facto reconstruction violates both the due process clause of the Fourteenth Amendment and the proscription of unreasonable searches and seizures contained in the Fourth Amendment.

(1) A suppression hearing is essentially an appeal from a magistrate's initial determination that probable cause exists for the issuance of a warrant. The Supreme Court of the United States has characterized suppression proceedings in terms of appellate procedure: "Although the *reviewing* court will pay substantial deference to *judicial* determinations of probable cause, the court must still insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police". (Emphasis added.) *Aguilar v. Texas, supra,* at 111. It is by now well established that the federal Constitution requires that when the right to appeal a judicial order is granted, there must be a record of sufficient completeness to permit "proper consideration of [appellant's] claims", and "adequate and effective appellate review". *Mayer v. City of Chicago,* 404 U.S. 189, 30 L. Ed. 2d 372 (1971).

---

[2] I agree with Justice MANDERINO, in his separate dissenting opinion herein, that Article I, Sec. 8 of the Constitution of Pennsylvania requires not only a writing, but a writing "subscribed to by the affiant", who is the officer supplying the information to support the issuance of a warrant. The words "subscribed to by the affiant" do not appear in the Fourth Amendment to the United States Constitution. I cannot agree with the Superior Court that the only purpose of this phrase in our state constitution was "so that the accusations and the accuser's name would be in writing". *Commonwealth v. Crawley,* 209 Pa. Superior Ct. 70, 77, 223 A. 2d 885 (1966), *aff'd per curiam,* 432 Pa. 627, 247 A. 2d 226 (1968). Thus the Pennsylvania Constitution alone would require the granting of the suppression motion in this case. This point was not raised in the lower court or argued in this court.

See also, *Griffin v. Illinois,* 351 U.S. 12, 20, 100 L. Ed. 891 (1956); *Commonwealth v. Anderson,* 441 Pa. 483, 272 A. 2d 877 (1971). This court held in *Anderson* that "while a transcript per se is not an absolute due process necessity, there must at least be an equivalent 'picture' of what transpired below". *Id.* at 493. In this analogous situation, I am satisfied that the testimony of police officers or a magistrate at a trial or suppression hearing concerning what occurred at some earlier time when the warrant issued cannot provide such an "equivalent picture".

The record in the present case illustrates the hazards inherent in relying on the memories of those present at the time a warrant is issued. As stated above, appellant's suppression hearing was held more than four months after the challenged search. At that hearing, as the majority opinion states, "Detective Burbush was initially unable to recall giving any oral testimony whatsoever. The magistrate, while acknowledging the existence of the sworn oral testimony, admitted that his memory was dimmed by the fact that the proceeding was 'some time ago' ". It is not surprising that the recollections of these witnesses were clouded. During a four month period a policeman normally makes numerous search warrant requests to a magistrate who must, in every case, make an independent review of the sworn facts presented to him and determine whether they constitute probable cause. To expect officer and magistrate to recall with accuracy at some later time what transpired on each such occasion is to place an impossible burden on the individual officials and an onerous burden on the efficient administration of justice.

In a different but analogous context the United States Supreme Court has pertinently observed: "the consequences of failure to provide an appeal, to record

the [juvenile court] proceedings, . . . may be to throw a burden upon the machinery for habeas corpus, to saddle the reviewing process with the burden of attempting to reconstruct a record, and to impose upon the Juvenile Judge the unseemly duty of testifying under cross-examination as to the events that transpired in the hearings before him." *In Re Gault,* 387 U.S. 1, 58, 18 L. Ed. 2d 527 (1967). To require a magistrate to reconstruct his grounds for determining probable cause from what must often be a cloudy memory is equally "unseemly", and as in this case and several others that are presently pending in this court, both the suppression court and the appellate court are saddled with the burden of attempting to reconstruct a record.[3]

The dangers alluded to above have recently been well expressed by Judge ELY of the Court of Appeals for the Ninth Circuit, dissenting in *Boyer v. Arizona,* 455 F. 2d 804 at 807-808 (1972): "The problem inherent in relying upon belated oral testimony to find that the existence of probable cause was demonstrated at an earlier hearing is obvious. Memories are blurred by the passage of time and by the wisdom gained through hindsight. Critical facts may be forgotten, and the possible initial uncertainty of the affiant may vanish when the search proves to be fruitful. Inadvertent additions to the remembered conversations are not unlikely. . . . I believe that the risk of error we are asked to ignore in this case places an intolerable restriction upon our power effectively to review a magistrate's decision as to probable cause."

(2) In the interest of protecting the right of all citizens to be free from unreasonable searches, the

---

[3] The evils of such a procedure are compounded by the fact that the magistrate's initial determination is made at an *ex parte* proceeding, so that a defendant has no way to challenge these recollections.

Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation. . . ." Concededly, that amendment has been construed to allow sworn oral testimony to be given to the magistrate, and does not expressly require the making of a contemporaneous record of the facts relied upon to provide probable cause.[4] While the United States Supreme Court has not spoken directly to this point, the whole philosophy of *Aguilar, Spinelli* and *Harris,* supra, as I read them, is to require the information about an informant which is necessary to establish probable cause to be readily demonstrable as of the time the probable cause was allegedly made out. This is not susceptible of being accomplished in any way other than a record, which means a contemporaneous writing; the cited Supreme Court opinions appear to presuppose affidavits or the equivalent as the vehicle through which probable cause is made to appear.

It is worth observing that the Fourth Amendment is also silent as to the effect of violation of its terms. Nowhere does it state that evidence seized without probable cause shall be excluded at trial. Without the exclusionary rule, however, the assurance of freedom from unreasonable searches or seizures, whether state or federal, would be, as the Supreme Court has said, merely " 'a form of words', valueless and undeserving of mention in a perpetual charter of inestimable human liberties". *Mapp v. Ohio,* 367 U.S. 643, 655, 6 L. Ed. 1081 (1961); see also *Weeks v. United States,* 232 U.S. 383, 58 L. Ed. 652 (1914). By the same token, so it

---

[4] *Commonwealth v. Crawley,* 209 Pa. Superior Ct. 70, 223 A. 2d 885 (1966); *Boyer v. Arizona,* 455 F. 2d 804 (9th Cir. 1972); *Lopez v. United States,* 370 F. 2d 8 (5th Cir. 1966); *Gillespie v. United States,* 368 F. 2d 1 (8th Cir. 1966); *Miller v. Sigler,* 353 F. 2d 424 (8th Cir. 1965); *Sparks v. United States,* 90 F. 2d 61 (6th Cir. 1937). But see, *Poldo v. United States,* 55 F. 2d 866 (9th Cir. 1932).

seems to me, the Amendment to be effective reasonably requires a contemporary written record as to probable cause, whether it be an affidavit or a transcription of sworn oral statements outside the affidavit.

The Court, finding no constitutional violation, nevertheless recognizes the dangers which inhere in the present practice. It proposes to avoid them by a rule of criminal procedure. I applaud this recourse in a proper case, but no rule for the future can serve to restore to appellant Milliken, and the others similarly situated whose cases are before us,[5] what I consider to have been a deprivation of the constitutional requirement of probable cause, and of due process in reviewing the magistrate's finding that such cause existed.

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I respectfully dissent. The Fourth Amendment to the Federal Constitution and Article I, Section 8, of the Pennsylvania Constitution cannot reasonably be read as permitting the result reached by the majority. Information related orally to the magistrate but not recited in the affidavit, the basis for issuing a warrant, cannot be later considered in testing whether probable cause existed for the issuance of the warrant—unless we read the constitutional provisions in an unnatural and unreasonable manner.

In *Aguilar v. Texas,* 378 U.S. 108, 115, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964), it was stated ". . . we conclude, therefore, that the search warrant should not have been issued *because the affidavit did not provide a sufficient basis* for a finding of probable cause. . . ." (Emphasis supplied.) In *Aguilar* the Court was specifically concerned with whether the affidavit contained

---

[5] Six appeals, all involving the identical issue presented herein, were argued (3 for a second time) at the Fall session of the court in November, 1972, and are awaiting disposition.

sufficient facts to justify the issuance of the warrant. *Aguilar* gave no indication that the defect of missing facts in the affidavit could be cured by subsequent testimony as to what facts were orally stated by the affiant at the time the warrant issued. *Aguilar* was later cited in *United States v. Ventresca*, 380 U.S. 102, 108-09, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965) and the Court said "... *[t]his is not to say that probable cause can be made out by affidavits which are purely conclusory*, stating only that the affiant's or an informer's belief that probable cause exists *without detailing any of the 'underlying circumstances' upon which that belief is based*. . . . Recital of some of the underlying circumstances *in the affidavit* is essential if the magistrate is to perform his detached function. . . ." (Emphasis supplied.)

More recently, in *United States v. Harris*, 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971), the Court in analyzing the sufficiency of facts necessary to constitute probable cause for the issuance of a warrant consistently referred to facts contained—or not contained —*in the affidavit*.

In all of these cases, it is clear that the Court is discussing the requirement of the Fourth Amendment that "... no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized. . . ."

Nor is it valid to conclude that the above cases were not concerned with Fourth Amendment requirements but only with the requirements of Rule 41 of the Federal Rules of Criminal Procedure. In *Aguilar* there is no reference whatsoever to Rule 41 of the Federal Rules of Criminal Procedure. There is not even a hint in any of the above decisions that the requirement of *Aguilar* holding that the affidavit must provide a sufficient basis for the finding of probable cause is based on Rule

41 of the Federal Rules of Criminal Procedure rather than on the constitutional requirement of the Fourth Amendment.

The requirements of the Declaration of Human Rights of the Pennsylvania Constitution, Article I, Section 8, is more explicit than the Fourth Amendment of the Federal Constitution.

The Pennsylvania Declaration of Human Rights states: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, *nor without probable cause, supported by oath or affirmation subscribed to by the affiant. . . .*" (Emphasis supplied.)

The Pennsylvania Constitution requires that the probable cause be supported by oath or affirmation subscribed to by the affiant.

The strained and unnatural interpretation placed on the above language in *Commonwealth v. Crawley,* 209 Pa. Superior Ct. 70, 223 A. 2d 885 (1966), cannot be followed. According to the *Crawley* case, the words in the Pennsylvania Constitution "subscribed to by the affiant" refers only to the oath or affirmation separate from the probable cause. Only a tortured reading permits such a conclusion. An oath or affirmation does not hang in midair. It is the imprimatur of that which is being sworn to or affirmed.

An oath or affirmation does not appear at the end of a blank sheet of paper. It *supports* that which precedes the oath or affirmation. The Constitution makes clear that the *probable cause* must be *supported* by the oath or affirmation.

The language of the Constitution states that the affiant must subscribe to *something.* One does not subscribe to nothing.

If the Pennsylvania Declaration of Human Rights did not require the recitation in the affidavit of the underlying facts providing the basis for the probable cause, it would be sufficient if an affidavit merely recited the following "I swear that what I told the magistrate is true." The statement of such a result makes a mockery of the requirements of the Pennsylvania Declaration of Human Rights.

Again, the Pennsylvania Constitution refers to the *affiant*. An *affiant* is one who signs an affidavit. An *affidavit* is always a *written statement* of the facts signed by the affiant under oath or affirmation.

The Fourth Amendment requires specificity. It speaks of *particularly describing* the place to be searched and the person or things to be seized. The Pennsylvania Constitution is likewise specific. As to the place, person or things, it requires *describing them as nearly as may be*. Better language could not have been chosen to express in the context of the constitutional provisions, that a writing is required. The effect of the majority's conclusion would be to allow the specificity required by both Constitutions to sometimes be related orally which cannot possibly have been intended by the language in the Constitutions.

Under the majority's conclusion, a magistrate can issue a warrant upon an application which contained nothing in writing except a person's name or an address. All other particulars can be handled by oral recitation and proven months or years later. I cannot agree with such a loose and blatantly unreasonable interpretation of the language in the Federal and Pennsylvania Constitutions. In interpreting human rights the first concern is the freedom of a free people. The judgment of sentence should be reversed and a new trial ordered.